**ORAL ARGUMENT REQUESTED**

# United States District Court

*for the*

# Southern District of New York

Case No. 25-cv-02580-MMG

In re:

HAL LUFTIG COMPANY, INC.,

*Debtor.*

FCP ENTERTAINMENT PARTNERS, LLC,

*Appellant,*

– against –

HAL LUFTIG COMPANY, INC.,

*Appellee.*

*On Appeal from Order of U.S. Bankruptcy Court, SDNY,*
*Hon. John P. Mastando III, Bankr. Case No. 22-11617-JPM*
*(Adv. Pro. No. 22-01176-JPM)*

## OPENING BRIEF FOR APPELLANT

SVETLANA K. IVY
LIPPES MATHIAS LLP
*Attorneys for Appellant*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
cfisher@lippes.com
sivy@lippes.com

CP COUNSEL PRESS    (800) 4-APPEAL • (381649)

## DISCLOSURE STATEMENT PURSUANT TO
## FEDERAL RULES OF BANKRUPTCY PROCEDURE 8012(A)

FCP Entertainment Partners LLC hereby states, under the penalty of perjury, that FCP Entertainment Partners, LLC is not subject to the ownership of a parent corporation or any publicly held corporation owning 10% or more of its stock.

# **TABLE OF CONTENTS**

DISCLOSURE STATEMENT PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 8012(a) .................................................................... i

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................1

JURISDICTIONAL STATEMENT ......................................................................3

ISSUES PRESENTED...........................................................................................4

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................5

STANDARD OF REVIEW ...................................................................................8

ARGUMENT ......................................................................................................10

  POINT I: A NON-DEBTOR IS NOT ENTITLED TO RECEIVE PROTECTION FROM
THE BANKRUPTCY STAY FOR THE LIFE OF A CONFIRMED FIVE-YEAR PLAN .....................................................................................................10

  POINT II: THE CONFIRMATION ORDER SHOULD BE REVERSED BECAUSE THE STAY GRANTED TO A NON-DEBTOR FOR ....................15

  THE LIFE OF THE PLAN IS NOT FAIR OR EQUITABLE ...........................15

CONCLUSION....................................................................................................19

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS.........21

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) ............................................................................ 11

*Gregory Funding v. Ventura*,
  638 B.R. 499 (EDNY 2022) ............................................................................. 15

*Harrington v. Purdue Pharma L.P.*,
  603 U.S. 204 (2024) ............................................................................... *passim*

*In re Ames Dept. Stores, Inc.*,
  582 F.3d 422 (2d Cir. 2009) ............................................................................... 9

*In re Parlement Techs., Inc.*,
  661 B.R. 722 (Bankr. D Del 2024) ................................................................... 13

*In re Pearl Resources LLC*,
  622 B.R. 236 (Bankr. S.D. Tex. 2020) ....................................................... 16, 18

*In re Reilly*,
  245 B.R. 768 (BAP 2d Cir. 2000) ...................................................................... 9

*In re Trinity Family Practice & Urgent Care PLLC*,
  661 B.R. 793 (Bankr. W.D. Tex 2024) ............................................................. 16

*In re Vebeliunas*,
  332 F.3d 85 (2d Cir. 2003) ............................................................................... 10

*Johns–Manville Corp. v. Asbestos Litigation Group
  (In re Johns–Manville Corp.)*,
  26 B.R. 420 (Bankr. SDNY 1983) .................................................................... 11

*Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contr. of N.Y., LLC*,
  536 B.R. 48 (EDNY 2015) ............................................................................... 12

*Pullman–Standard v. Swint*,
    456 U.S. 273 (1982) ...................................................................................9

*Purdue Pharma L.P. v. Massachusetts*,
    2024 Bankr. LEXIS 2916 (2024) ..............................................................14

*Queenie, Ltd. v Nygard Intern.*,
    321 F.3d 282 (2d Cir. 2003) ......................................................................11

*Teachers Ins. & Annuity Ass'n v. Butler*,
    803 F.2d 61 (2d Cir. 1986) ........................................................................11

*U.S. Bank Nat. Ass'n*,
    583 U.S. 396 (2018) ................................................................................8, 9

*United States v. U.S. Gypsum Co.*,
    333 U.S. 364 (1948) ...................................................................................9

## STATUTES

Title 11 U.S.C. § 105(a) ...................................................................................6

Title 11 U.S.C. § 362 ......................................................................................10

Title 11 U.S.C. § 362(a) ....................................................................................6

Title 11 U.S.C. § 1129 ..................................................................................8, 19

Title 11 U.S.C. § 1191 .............................................................................. 4, 8, 19

Title 11 U.S.C. § 1191(b) ...............................................................................15

Title 11 U.S.C. § 1191(c)(3) ..................................................................... 16, 18

Title 11 U.S.C. § 1301 .....................................................................................11

Title 28 U.S.C. § 158(a) ....................................................................................3

**FEDERAL RULES**

Fed. R. Bankr. P. 8015(a)(5) .......................................................................21

Fed. R. Bankr. P. 8015(a)(6) .......................................................................21

Fed. R. Bankr. P. 8015(a)(7)(B) ..................................................................21

Fed. R. Bankr. P. 8015(g) ............................................................................21

## PRELIMINARY STATEMENT

FCP Entertainment Partners LLC ("FCP") brought this appeal to challenge the Bankruptcy Court's grant of an injunction to Hal Luftig ("Luftig"), a non-debtor in the underlying Bankruptcy proceeding whose assets are not subject to any restraints.  FCP holds a judgment for $2,638,925.78 against Hal Luftig Company ("Debtor") and Luftig personally, jointly and severally. The Debtor filed for bankruptcy before FCP was able to enforce its judgment, but Luftig did not. Nor did he otherwise subject himself to the Bankruptcy Court's jurisdiction or limitations applicable to debtors.  Instead, he secured the benefit of the temporary bankruptcy stay protection initially and, ultimately, in an apparently unprecedented fashion, was granted a stay for the entirety of the confirmed five-year bankruptcy plan.

As a result, FCP is not only limited in what it stands to recover from the Debtor but is effectively precluded from enforcing its judgment against Luftig individually. The Bankruptcy Court granting a non-debtor protection for the life of a five-year bankruptcy plan, without providing for sufficient protection of the non-debtor's assets in the meantime, is contrary to law and grossly unfair and inequitable.

The United States Supreme Court unequivocally held in *Harrington v. Purdue Pharma L.P.*, 603 US 204 (2024), that bankruptcy courts should not confirm plans that release non-debtors of liability.  Indeed, the Court stated that "the bankruptcy code does not authorize a release and injunction that, as part of a plan or

1

reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Id.* at 207. Yet, this is exactly what happened here. After a two-and-a-half-year temporary stay extended to Luftig individually, the Bankruptcy Court confirmed the Debtor's Third Amended Small Business Plan of Reorganization Under Chapter 11, including a provision protecting Luftig individually from any enforcement for the entirety of the five-year plan and providing insufficient protections to FCP.

The Bankruptcy Court recognized the unprecedented nature of its action, but it is wrong to characterize the issue as one of first impression without any guidance in the law. As discussed herein, several cases clarify that granting a non-debtor stay protection for the entire life of a confirmed bankruptcy plan goes against the very purpose of the bankruptcy stay. Furthermore, the law mandates that bankruptcy plans under Chapter 11, Subchapter V must be fair and equitable, and there is no view under which granting Luftig protection from enforcement for five years without any restrictions imposed in the meantime is fair or equitable. Simply put, absent corrective action by this Court, FCP is precluded from enforcing its judgment against Luftig for at least five more years, leaving Luftig free to dissipate or hide assets as he pleases. There is no question that these are exactly the circumstances – effectively discharging claims against a nondebtor – the U.S. Supreme Court has disavowed.

2

## JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of New York has appellate jurisdiction over this matter because it can review any appeals taken from final judgments, orders, and decrees issued by the United States Bankruptcy Court for the Southern District of New York pursuant to 28 U.S.C. § 158(a).

## ISSUES PRESENTED

<u>QUESTION 1</u>: Whether the Bankruptcy Court erred in granting a non-debtor protection of the bankruptcy stay, over the objection of a creditor, during the life of a confirmed five-year plan?

<u>ANSWER</u>: Yes. Extending the bankruptcy stay to a non-debtor for the life of a confirmed bankruptcy plan, without creditor consent, is contrary to the general principles and policies that underlie the Bankruptcy Code. A non-debtor is not entitled to such extended protection.

<u>QUESTION 2</u>: Whether the Bankruptcy Court erred in confirming the Debtor's Third Amended Chapter 11, Subchapter V Plan, which extended the bankruptcy stay to non-debtor Hal Luftig individually for the life of the plan without providing any protections whatsoever to the non-debtor's creditors?

<u>ANSWER</u>: Yes. The Bankruptcy Court erred in confirming the Third Amended Plan because it is not fair or equitable. Because there are no restrictions on the non-debtor and he is free to dissipate or hide assets during the five-year stay period, the Plan does not provide sufficient protections to FCP, as explicitly required by the Bankruptcy Code pursuant to 11 U.S.C. 1191.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Hal Luftig Company, Inc. ("Debtor") is a theatrical production company that develops, acquires, presents and promotes theatrical plays, musicals, and similar works of theater on stage and in other media. R. Doc. No. 5, ¶ 5. Hal Luftig is the Debtor's President and sole shareholder. *Id.* at ¶ 1. FCP Entertainment Partners, LLC ("FCP") was an investor in project(s) of the Debtor. *Id.* at ¶ 7. After arbitration following a dispute between the Debtor and FCP, on April 1, 2023, an arbitrator issued a final award against both the Debtor and Luftig individually, rendering them jointly and severally liable to FCP for $2,638,925.78 ("Final Award"). *Id.* at ¶ 6. The Final Award was confirmed with the U.S. District Court for the Southern District of New York. *Id.* at ¶ 8.

In response to the Final Award, the Debtor commenced the instant Chapter 11 (Subchapter V) bankruptcy. *Id.* at 9; *See generally* Case No. 22-bk-11617 (JPM) ("Chapter 11 Case"). Notably, FCP was and remains the Debtor's largest creditor by an overwhelming margin. AA-165. Although the Final Award of $2,638,925.78 was against Debtor and Luftig, jointly and severally, Luftig did not file for bankruptcy. R. Doc. No. 5, ¶¶ 6, 10. Instead, Luftig sought protection from creditors in a separate adversary proceeding commenced by the Debtor. *See generally* Case No. 22-ap-01176 (JPM). That proceeding was commenced for the sole purpose of non-debtor Luftig obtaining an extension of the automatic stay in his individual capacity. Doc.

No. 5, ¶¶ 10,11.  Over opposition by both FCP and the Office of the United States Trustee, the Bankruptcy Court entered an Order Granting Debtor's Motion Pursuant to 11 U.S.C. §§ 362(a) and 105(a): (I) to Extend the Automatic Stay to non-debtor Hal Luftig; (II) For a Temporary Restraining Order and Preliminary Injunction; (III) Setting Hearing Date; and (IV) Fixing the Form and Manner of Notice ("Luftig Injunction"). *See* AA-34 – 36. This temporarily stayed any enforcement activities against non-debtor Luftig. *Id.*

Subsequently, the Debtor and FCP agreed to set FCP's claim in the Chapter 11 Proceeding at $2,862,776 ("FCP Claim"). *See* AA-150-51. On March 1, 2023, the Debtor filed a Chapter 11 Small Business Subchapter V Plan ("First Plan"). *See* R. Doc. No. 55. The First Plan contained a non-consensual, non-debtor, third-party release ("Luftig Release"). *Id.* In sum and substance, the Luftig Release would have released Luftig individually of all liability to FCP for the Final Award in exchange for infusing funds into the First Plan. *Id.* Due to the presence of the Luftig Release in the First Plan, and FCP's objection, the First Plan had to confirmed by the United States District Court for the Southern District of New York ("District Court"). *See* AA-153 ("To the extent claims encompassed by the third-party releases are non-core, the bankruptcy court is required to submit 'proposed findings of fact and conclusions of law' to the district court, for that court's de novo review and issuance of final judgment"). The District Court ultimately, on March 19, 2024, declined to

6

confirm the First Amended Plan, holding that the Bankruptcy Court improperly applied the law surrounding non-consensual, non-debtor, third-party releases. AA-148-58. Shortly thereafter, on June 27, 2024, the United States Supreme Court decided *Harrington v. Purdue Pharma L.P.*, 603 US 204 (2024), which put a halt to the practice of non-consensual, non-debtor, third-party releases, and which prevented Luftig from obtaining a full release of liability for the Final Award, by extension.

However, on November 21, 2024, the Debtor renewed their efforts at shielding Luftig from liability on the Final Award, through a Third Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code ("Third Amended Plan"). AA-159-181. Although the Third Amended Plan does not contain a full non-consensual third-party release, it explicitly provided that Luftig, a non-debtor, would retain the benefit of the Luftig Injunction during the entirety of the five-year life of the plan. AA-171-72. Specifically, the Third Amended Plan states that "FOR THE AVOIDANCE OF DOUBT, THE INJUNCTION OBTAINED IN ADVERSARY PROCEEDING 22-01176 APPLIES ONLY TO FCP" and that the Luftig Injunction "SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EARLIEST OF THE TIME THE CHAPTER 11 CASE IS CLOSED, DISMISSED, OR THE DISCHARGE IS GRANTED OR DENIED." *Id*.

The Bankruptcy Court confirmed the Third Amended Plan in full, over objection by FCP and on February 24, 2025, a Memorandum Opinion and Order on Confirmation of Debtor's Third Amended Small Business Plan of Reorganization Under Chapter 11 ("Opinion") was entered. *See* AA-219-59. Importantly, the Opinion states that "it appears to be an issue of first impression as to whether a non-debtor stay extension should remain in place for the life of a plan." *See* AA-253. Nonetheless, the Bankruptcy Court entered an Order Confirming Debtor's Third Amended Small Business Plan of Reorganization Pursuant to 11 U.S.C. §§ 1129 and 1191 and Court's Memorandum Opinion and Order ("Confirmation Order"), expressly incorporating the entirety of the Opinion. *See* AA-260-67.

FCP appeals and contends that precluding it from enforcing its arbitration award against non-debtor Luftig for five years is contrary to law and neither fair nor equitable, especially when there are no limitations imposed to prevent dissipation of assets by Luftig. The Bankruptcy Court overstepped and improperly granted unprecedented protections that a non-debtor is not entitled to.

## STANDARD OF REVIEW

To "assess the judge's decision, an appellate court must consider all its component parts, each under the appropriate standard of review." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgt. LLC v Vil. at Lakeridge, LLC*, 583 US 387, 393 (2018). Generally, a bankruptcy court's legal conclusions are evaluated *de novo* and

its findings of fact are subject to a clearly erroneous standard. *In re Ames Dept. Stores, Inc.*, 582 F3d 422, 426 (2d Cir. 2009). A *de novo* review of a bankruptcy court's legal conclusions requires that no deference be given to the bankruptcy court. *In re Reilly*, 245 BR 768, 772 (BAP 2d Cir. 2000), *aff'd,* 242 F3d 367 (2d Cir. 2000) ("A *de novo* review allows us to decide the issue as if no decision had been previously rendered... No deference is given to the Bankruptcy Court's decision"). Where factual findings are at issue, the court will determine that a finding is "clearly erroneous" when they are left with the definite and firm conviction that a mistake has been made. *United States v. U.S. Gypsum Co.,* 333 US 364, 395 (1948). If a question does not fall neatly into a strictly legal/factual dichotomy, the proper standard to resolve such mixed questions of law and fact can be either *de novo* or the clearly erroneous standard – depending on whether answering the question "entails primarily legal or factual work." *U.S. Bank Nat. Ass'n* 583 US at 396 (2018), quoting *Pullman–Standard v. Swint,* 456 US 273, 289, n. 19 (1982) (A mixed question asks whether "the historical facts... satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated"). In other words, a mixed question that is primarily legal in nature is entitled to *de novo* review, whereas a mixed question that is primarily factual in nature is entitled to review under the clearly erroneous standard. *Id.* Even so, as a

general rule, "[m]ixed questions of fact and law are subject to *de novo* review." *In re Vebeliunas*, 332 F3d 85, 90 (2d Cir. 2003).

Here, the operative facts are not in dispute and this Court can review the legal issues before it *de novo*. Even should this Court find any factual issues pertinent, however, the Confirmation Order warrants reversal regardless of the applicable review standard.

## ARGUMENT

## POINT I

## <u>A NON-DEBTOR IS NOT ENTITLED TO RECEIVE PROTECTION FROM THE BANKRUPTCY STAY FOR THE LIFE OF A CONFIRMED FIVE-YEAR PLAN</u>

Although the initial grant of a temporary stay to Luftig in early 2023 was unfavorable and unwarranted in FCP's view, extension of the stay to a non-debtor for the five-year life of a confirmed bankruptcy plan is wholly unprecedented and improper. It is contrary to settled law and the purpose of bankruptcy stays, and, accordingly, should be corrected by this Court.

Codified under 11 U.S.C. § 362, the automatic stay is a cornerstone of U.S. bankruptcy law. The automatic stay serves as a fundamental protection in bankruptcy, halting most creditor actions against the debtor upon the filing of a bankruptcy petition and providing the debtor with a breathing spell from collection efforts and actions to allow for an orderly reorganization or liquidation process.

Critically, as the Second Circuit has articulated, "stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." *Queenie, Ltd. v Nygard Intern.,* 321 F3d 282, 287 (2d Cir. 2003); *see also Teachers Ins. & Annuity Ass'n v. Butler,* 803 F2d 61, 65 (2d Cir. 1986) ("It is widely accepted, except as provided in 11 U.S.C. § 1301 *infra,* the automatic stay created upon the filing of a bankruptcy petition is limited to debtors and does not encompass nonfiling codefendants").

Although there have been rare instances when courts have extended the bankruptcy stay to non-debtors, such extensions are exceptional and typically require a showing that proceeding against the non-debtor would have an immediate adverse economic impact on the debtor's estate. *Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Corp.),* 26 BR 420, 435–36 (Bankr. SDNY 1983) (on rehearing). Actions where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant" have also been deemed proper circumstances to extend the automatic stay over a non-debtor. *A.H. Robins Co. v. Piccinin,* 788 F2d 994, 999 (4th Cir.1986); *Queenie, Ltd. v Nygard Intern.,* 321 F3d 282, 287-88 (2d Cir. 2003). FCP has found no cases where a non-debtor was granted protection from creditors for the life of the plan. What the Bankruptcy Court did here – precluding any collection efforts against a non-debtor for at least five years – is wholly unprecedented.

11

The Bankruptcy Court characterized the issue of a non-debtor enjoying protections for the entirety of a five-year plan as an issue of first impression. *See* AA-253. But the absence of case law directly on point does not mean that case law is silent on the question. For example, in *Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contr. of N.Y., LLC,* 536 BR 48 (EDNY 2015), the District Court explained that an automatic stay is not properly extended during, *inter alia*, a confirmed plan's life if the "creditors of a Chapter 11 debtor are better off if separate creditors of an affiliated non-debtor are allowed to pursue their non-debtor defendant and have their claims satisfied from the non-debtor defendants." *Id.*, 536 BR at 52. Declining to extend the stay during the life of a plan "will reduce the debt load on the Chapter 11 debtor and allow a greater recovery for its separate creditors." *Id.* "In that situation, the Bankruptcy Court would likely see no reason to extend the automatic stay, whether pre-confirmation or as part of a Chapter 11 plan of reorganization." *Id*.

The *Pavers* court continued by stating that an automatic stay is also not properly continued over the life of a plan "if there is one super-dominant creditor that effectively holds all or almost all of the estate's debt." *Id.* Not only would the *Pavers* court decline to extend a stay where there is one "super-dominant creditor," as FCP is here, but the court also held that dismissal or conversion of the case could be an appropriate remedy. *Id.* ("[T]he Bankruptcy Court might well not only decline

to extend the stay to protect non-debtors, but it might dismiss or convert the Chapter 11 case to Chapter 7 as a bad faith filing because it is a two-party dispute").

The absence of any similar cases of a Bankruptcy Court granting a non-debtor a five-year stay demonstrates just how irregular the Third Amended Plan and Confirmation Order are. Indeed, the Bankruptcy Court even noted that "many courts that have written on non-debtor stay extensions, including the few that have done so post-*Purdue Pharma*, <u>have reviewed such stay extensions as temporary injunctive relief to facilitate negotiations among the parties</u>." AA-253 (emphasis added).[1] Pursuant to the very authorities cited by the Bankruptcy Court, non-debtor stays are meant to be of a temporary nature, with limited duration, not a years-long windfall of protection from enforcement efforts.

Despite this, the Bankruptcy Court relied on a single order, issued prior to plan confirmation in a long-running and complex chapter 11 bankruptcy case with thousands of claimants, where a non-debtor enjoyed automatic stay protection. *See* AA-253-54 (citing *Purdue Pharma L.P. v. Massachusetts*, *Fortieth Amended Order*

---

[1] The Bankruptcy Court cites two recent cases for this proposition: *See, e.g., In re Parlement Techs., Inc.*, 661 B.R. 722, 724–25 (Bankr. D Del 2024) (debtor sought to extend the automatic stay to its former officers as co-defendants in certain state court litigations while the bankruptcy case proceeded); *see also Purdue Pharma L.P. v. Massachusetts*, 2024 Bankr. LEXIS 2916, at *6–11 (granting three-week non-debtor stay extension to allow the debtor and the interested parties to continue negotiations towards a global settlement).

*Dated December 2, 2024, Granting Motion for A Preliminary Injunction* at 3,

Docket No. 610 at Adversary Proceeding No. 19-08289).[2] This order is inapposite

to the relevant facts at issue because it did not grant stay protection over the life of

a confirmed plan. Additionally, the non-debtors at issue there only received stay

extensions because there was a proposal in place for certain non-debtors to fund a

substantial amount of money into the plan in exchange for non-consensual third-

party releases. *See generally Harrington v. Purdue Pharma L.P.*, 603 US 204 (2024).

This practice has explicitly been curtailed by the United States Supreme Court

following lengthy litigation. *Id.* Moreover, as the Bankruptcy Court noted, the non-

debtor stay therein had already been in effect for five years and the plan still

remained unconfirmed in the main bankruptcy proceeding. *See generally* Case No.

19-bk-23649 (SHL) (confirmation of a plan has *still* not occurred, despite the age of

the case).

The Bankruptcy Court's extension of a temporary stay for the life of a

confirmed plan is especially inappropriate where, as here, the underlying bankruptcy

proceeding was brought under Chapter 11, Subchapter V. Such bankruptcies are also

---

[2] "*See, e.g., Purdue Pharma L.P. v. Massachusetts*, *Fortieth Amended Order Dated December 2, 2024, Granting Motion for A Preliminary Injunction* at 3, Docket No. 610 at Adversary Proceeding No. 19-08289 (order accompanying the court's ruling found at 2024 Bankr. LEXIS 2916 noting that the initial non-debtor stay extension was granted on October 11, 2019, more than 5 years prior to the court's ruling granting a three-week extension to the ongoing non-debtor automatic stay)." Opinion at 28-29.

known as "small business bankruptcies," and are meant to have tighter timelines so that a plan can be proposed and confirmed in an expedited manner. *Gregory Funding v. Ventura*, 638 BR 499, 502 (EDNY 2022). In other words, Subchapter V bankruptcies do not contemplate long-term, extended bankruptcy proceedings, with stays lasting for years. The instant case has only lasted as long as it has because of the lengthy litigation surrounding the Luftig Release. Luftig continued to enjoy two and a half years of stay protection due to that additional litigation.

## POINT II

### THE CONFIRMATION ORDER SHOULD BE REVERSED BECAUSE THE STAY GRANTED TO A NON-DEBTOR FOR THE LIFE OF THE PLAN IS NOT FAIR OR EQUITABLE

Not only is the stay Luftig Injunction unprecedented and contrary to law and the purpose of bankruptcy stays, but it should also be reversed because it is patently unfair and inequitable.

11 U.S.C. § 1191(b) requires that a Chapter 11, Subchapter V bankruptcy plan must be found to be fair and equitable before it may be confirmed. Subsection (c) of § 1191 defines what a fair and equitable plan is under Chapter 11, Subchapter V by providing a list of requirements, including that the Debtor: "be able to make all payments under the plan; or there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and the plan provides appropriate remedies… to protect the holders of claims or interests in the event that the payments

are not made." 11 U.S.C. § 1191(c)(3); *In re Pearl Resources LLC*, 622 BR 236, 269 (Bankr. S.D. Tex. 2020). However, application of the fairness and equity of a proposed plan "requires more than a mechanical, check-the-box application of the requirements of § 1191(c)." *In re Trinity Family Practice & Urgent Care PLLC*, 661 BR 793, 815 (Bankr. W.D. Tex 2024). Instead, the requirements set forth in § 1191(c) are merely the baseline, and "the court has the discretion to require more as a condition of finding that the plan is fair and equitable." *Id.* (noting that the insertion of the word *including* in the preamble of § 1191(c) renders the following requirements the bare minimum).

Inclusion of the Luftig Injunction in the Third Amended Plan renders it unfair and inequitable. The Luftig Injunction essentially amounts to a discharge over the life of the plan and will continue to enjoin FCP from enforcing its rights in the $2,638,925.78 constituting the Final Award. FCP followed the proper process and procedure and obtained a valid judgment against both the Debtor and Luftig, jointly and severally. That FCP should continue to be restrained from enforcing the Final Award against a non-debtor during the life of the Third Amended Plan goes against all concepts of fairness and equity.

The United States Supreme Court reemphasized the purpose of the automatic stay in *Harrington v. Purdue Pharma L.P.,* 603 US 204 (2024), noting that the stay that accompanies a confirmed plan "operates only for the benefit of the

debtor against its creditors and does not affect the liability of any other entity." *Id.*
The Court specifically rejected the ability of a bankruptcy court to "extend to *nondebtors* the benefits of a Chapter 11 discharge usually reserved for *debtors*." *Id.* at 215 (emphasis in original). While *Purdue Pharma* involved non-consensual third party releases, the Court's statements convey the view of the highest court on protections extended to nondebtors and underscore the policy considerations that guide the application of stays and injunctions in bankruptcy cases. Indeed, the Supreme Court's holding is particularly applicable because the Court explicitly held "that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, *effectively seeks to discharge claims against a nondebtor without the consent of affected claimants*." *Id.* at 227 (emphasis added). While the Third Amended Plan does not completely release Luftig of his liability on the Final Award, it does, indeed, effectively operate as a discharge for the life of the plan. The five-year runway that Luftig has been granted, on top of the two and a half years that he has already enjoyed, permits him to dispose of assets and property which may be used to satisfy the Final Award without worry of FCP enforcing their rights. FCP is not protected or guaranteed in any way that there will be anything of Luftig's left to enforce their rights against at the conclusion of the Third Amended Plan.

The Third Amended Plan is unquestionably unfair and inequitable in this instance because it fails to provide for satisfactory protection to FCP and imposes no restrictions whatsoever to prevent dissipation of assets or other improper conduct by Luftig. Before a plan may be considered fair or equitable, it must "provide[] appropriate remedies… to protect the holders of claims or interests in the event that the payments are not made." 11 U.S.C. § 1191(c)(3); *In re Pearl Resources LLC*, 622 BR 236, 269 (Bankr. S.D. Tex. 2020). The Third Amended Plan includes a provision whereby Luftig would be required "to contribute up to an aggregate of $100,000.00" ("Backstop Commitment") to fund the Third Amended Plan if the Debtor were to default on plan payments. *See* Third Amended Plan at 18. This provision is clearly insufficient protection for FCP, which holds a judgment in the millions against both the Debtor and Luftig individually.

Moreover, it is important to note that of the $2,862,776 FCP Claim, even should Debtor make all payments as scheduled, the Third Amended Plan provides for FCP to be paid only 25% of that claim amount through the plan, or $715,694. And if the Debtor defaults and the Backstop Commitment comes into effect, FCP's already significantly reduced claim will be reduced to some percentage of the $100,000 making up the Backstop Commitment. Even if FCP were to obtain the entirety of the Backstop Commitment, such an amount only amounts to approximately 3% of the FCP Claim. These "remedies" are not tenable, especially

when viewed in conjunction with the existence of the Luftig Injunction in the Third Amended Plan. Thus, it is critical that this Court correct the Bankruptcy Court's error and allow FCP to pursue Luftig in his personal capacity, or, at the very least, impose restrictions to Luftig to ensure that he does not use the lengthy stay period to dissipate or hide assets.

## CONCLUSION

Luftig has used every avenue to obtain bankruptcy protections without actually filing for bankruptcy, including seeking a full release of claims against him individually. The Bankruptcy Court granted him the next best thing – protection from creditors for the life of a five-year plan with no restrictions imposed on his assets. This is unprecedented, contrary to law and grossly unfair and inequitable. For all the reasons discussed in this brief and detailed in the Record, FCP respectfully requests that this Court: (i) reverse the Order Confirming Debtor's Third Amended Small Business Plan of Reorganization Pursuant to 11 U.S.C. §§ 1129 and 1191 and vacate the Memorandum Opinion and Order on Confirmation of the Third Amended Small Business Plan of Reorganization Under Chapter 11, and (ii) grant such other relief deemed proper.

Dated:      May 21, 2025
                Buffalo, New York

**LIPPES MATHIAS LLP**

*/s/Svetlana K. Ivy*
Svetlana K. Ivy, Esq.
Christopher M. Fisher, Esq.
      (*SDNY admission pending*)
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216
(716) 853-5100
sivy@lippes.com
cfisher@lippes.com

*Counsel for Appellant*
*FCP Entertainment Partners, LLC*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.  This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 4,369 words.

2.  This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen (42) point Times New Roman.


Dated: May 21, 2025
       Rochester, New York

                                        */s/Svetlana K. Ivy*_____
                                        Svetlana K. Ivy

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, I electronically filed the foregoing Appellant's Opening Brief and Appellant's Appendix with the Clerk of the Court for the United States District Court for the Southern District of New York by using the CM/ECF system.  All of the participants in this case are registered CM/ECF users, and will be served by the CM/ECF system.

/s/Svetlana K. Ivy
LIPPES MATHIAS LLP
Svetlana K. Ivy, Esq.
Christopher M. Fisher, Esq.
(SDNY admission pending)
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216
(716) 853-5100
sivy@lippes.com
cfisher@lippes.com

Counsel for Appellant
FCP Entertainment Partners, LLC