**ORAL ARGUMENT REQUESTED**

**Case No.
25-CV-02580-MMG**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**IN RE: HAL LUFTIG COMPANY, INC.
BANKRUPTCY APPEAL**

FCP ENTERTAINMENT PARTNERS, LLC,
*Appellant*,

*v.*

HAL LUFTIG COMPANY, INC.,
*Appellee*.

On Appeal from the United States Bankruptcy Court for the
Southern District of New York
Bankruptcy Case No. 22-11617 (JPM)

**BRIEF OF APPELLEE HAL LUFTIG COMPANY, INC.**

Sheryl P. Giugliano
Nicolas A. Florio
RUSKIN MOSCOU FALTISCHEK, P.C.
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556-0190
(516) 663-6600
sgiugliano@rmfpc.com
nflorio@rmfpc.com
*Attorneys for Appellee*

June 20, 2025

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ................................................................................2

STANDARD OF REVIEW ............................................................................10

SUMMARY OF THE ARGUMENT ...............................................................11

ARGUMENT ..................................................................................................12

    I.    The Bankruptcy Court Did Not Err in Holding That the
Extension of the Automatic Stay to a Debtor's Sole
Shareholder Over the Life of a Plan Is Permissible Under the
Bankruptcy Code and Applicable Law ...................................................12

        A.    *The Extension of the Automatic Stay to Mr. Luftig
Is Necessary for the Debtor's Successful
Reorganization* ...........................................................................13

        B.    *The Extension of the Automatic Stay to Mr. Luftig
Is Consistent with Applicable Law and Has Been
Followed by at Least One Other Court* ...................................18

    II.    The Bankruptcy Court Did Not Err in Its Finding That the
Debtor's Third Amended Plan Is Fair and Equitable ..............................23

    III.    The Appeal Is Equitably Moot Because the Third Amended
Plan Is Now Substantially Consummated ................................................27

CONCLUSION ................................................................................................30

CERTIFICATE OF COMPLIANCE ...............................................................31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Compania Int'l Financiera S.A. v. Calpine Corp. (In re Calpine Corp.)*,
  390 B.R. 508 (S.D.N.Y. 2008) ................................................................30

*County of Suffolk v. Stone & Webster Engineering Corp.*,
  106 F.3d 1112 (2d Cir. 1997) ...............................................................15

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*,
  416 F.3d 136 (2d Cir. 2005) .................................................................30

*Freeman v. Journal Register Co.*,
  452 B.R. 367 (S.D.N.Y. 2010) ..............................................................29

*Hal Luftig Co. v. FCP Ent. Partners, LLC (In re Hal Luftig Co.)*,
  Adv. Pro. No. 22-01176, 2023 Bankr. LEXIS 19 (Bankr. S.D.N.Y. Jan. 5, 2023) ...........................................................................................4

*Harrington v. Purdue Pharma L.P.*,
  603 U.S. 204 (2024) ............................................................... 20, 21, 25

*In re 1515 Broadway Assocs., L.P.*,
  153 B.R. 400 (S.D.N.Y. 1993) ........................................................ 28, 29

*In re Adelphia Commc'ns Corp.*,
  361 B.R. 337 (S.D.N.Y. 2007) ..............................................................11

*In re Charter Commc'ns, Inc.*,
  691 F.3d 476 (2d Cir. 2012) ........................................................... 10, 27

*In re Chateaugay Corp.*,
  94 F.3d 772 (2d Cir.1996) ....................................................................29

*In re Kirwan Offices, S.à.r.l.*,
  592 B.R. 489 (S.D.N.Y. 2018) ..............................................................10

*In re Miracle Rest. Group, LLC*,
   Case No. 24-11158, 2025 WL 1400915 (Bankr. E.D. La. May 13, 2025) .. *passim*

*In re Motors Liquidation Co.*,
   829 F.3d 135 (2d Cir. 2016) ........................................................................ 11, 17

*In re Parlement Techs., Inc.*,
   661 B.R. 722 (Bankr. D. Del. 2024) .......................................................14

*In re Prudential Lines, Inc.*,
   170 B.R. 222 (S.D.N.Y. 1994) ...............................................................27

*In re Sims*,
   534 F.3d 117 (2d Cir. 2008) ...................................................................10

*Kraebel v. New York City Dep't of Hous. Pres. & Dev.*,
   959 F.2d 395 (2d Cir. 1992) ...................................................................17

*Loral Stockholders Protective Comm. v. Loral Space & Commc'ns Ltd. (In re*
   *Loral Space & Commc'ns Ltd.)*,
   342 B.R. 132 (Bankr. S.D.N.Y.2006) ...................................................29

*McCarron v. Andrews et al. (In re Andrews)*,
   385 B.R. 496 (Bankr. D. Conn. 2008)...................................................24

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ...............................................................................24

*Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contr. of N.Y., LLC*,
   536 B.R. 48 (E.D.N.Y. 2015) ................................................................22

*Purdue Pharma L.P. v. Massachusetts*,
   666 B.R. 461 (Bankr. S.D.N.Y. 2024) ................................................ 14, 15, 19

*Queenie, Ltd. v. Nygard Int'l.*,
   321 F.3d 282 (2d Cir. 2003) ...................................................................14

*Readco, Inc. v. Marine Midland Bank*,
   81 F.3d 295 (2d Cir. 1996) .....................................................................18

*Six West Acquisition, Inc. v. Loews Cineplex Ent. Corp.*,
    286 B.R. 239 (S.D.N.Y. 2002) ....................................................................... 10, 28

*Tennessee Student Assistance Corp. v. Hood*,
    541 U.S. 440 (2004) ...........................................................................................25

*U.S. v. Carr*,
    557 F.3d 93 (2d Cir. 2009) .................................................................................15

*U.S. v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002) .............................................................................15

## **<u>Statutes</u>**

11 U.S.C. § 362 ......................................................................................................3

11 U.S.C. § 362(c)(2) ...................................................................................... 18, 19

11 U.S.C. § 1101(2) ..............................................................................................28

11 U.S.C. § 1129 ....................................................................................................9

11 U.S.C. § 1141(d)(1)(A) ....................................................................................25

11 U.S.C. § 1181(a) ..............................................................................................28

11 U.S.C. § 1191 ....................................................................................................9

11 U.S.C. § 1191(a) ................................................................................................8

11 U.S.C. § 1191(b) ...................................................................................... *passim*

11 U.S.C. § 1191(c) ...................................................................................... *passim*

11 U.S.C. § 1192 ..................................................................................................18

## PRELIMINARY STATEMENT

This is a frivolous litigation brought by a creditor with deep pockets that failed to preserve its rights or make comprehensible legal arguments below, and now seeks to cure those deficiencies on appeal. For the reasons set forth herein, the appeal must be dismissed. For the last six (6) years, FCP Entertainment Partners, LLC ("**Appellant**" or "**FCP**") has consistently used this country's legal system as a tool to harass Hal Luftig Company, Inc. (the "**Debtor**") and Hal Luftig ("**Mr. Luftig**"). Appellant obtained an arbitration award against the Debtor and Mr. Luftig for breach of contract (even though Mr. Luftig was not a party to the contract, nor was he found liable for breach of fiduciary duty), and then sought to use that award to destroy Mr. Luftig's life's work as a highly-regarded and successful Broadway producer.

At the beginning of the Debtor's chapter 11 case, the automatic stay was extended to Mr. Luftig because it was clear that he is essential to the Debtor's successful reorganization. As a result, Mr. Luftig was able to focus on creating new and profitable opportunities for Debtor-owned projects resulting in distributions to creditors, including Appellant. Continuing the extension of the automatic stay to Mr. Luftig through the life of the Debtor's plan of reorganization only for as long as the stay protects the Debtor is lawful and essential to the Debtor's reorganization. Appellant's attempt to conflate this lawful provision with an impermissible third-party release must be ignored.

1

This appeal should be denied as a result of Appellant's fatal mistakes in the court below: (a) Appellant never appealed the order extending the automatic stay to Mr. Luftig (it is the law of the case); (b) Appellant conceded that a previous version of the plan that included a third-party release was confirmable but for that release (but now argues that same plan without the release is unfair and inequitable); (c) Appellant never objected to the plan's five-year payout provision; (d) Appellant failed to offer any evidence at either confirmation hearing that the Debtor's plans are not fair and equitable (the fact that the largest unsecured creditor is dissatisfied is not the standard); and (e) Appellant did not seek a stay pending appeal and has already cashed its first distribution check.

## STATEMENT OF FACTS

The Debtor is a theatrical production company that develops, acquires, presents, and promotes theatrical plays, musicals, and similar works of theater on stage and in other media. (HLCA-0001–HLCA-0002, ¶¶4–5). The Debtor's principal, Mr. Luftig is an award-winning Broadway producer and the creative lead behind the Debtor's production titles. (HLCA-0004, ¶¶13–15).

On August 12, 2019, Appellant commenced an arbitration against the Debtor for breach of contract, and Mr. Luftig in his individual capacity, for breach of fiduciary duty. (HLCA-0007, ¶26). On April 1, 2022, the arbitrator issued his final award (the "**Final Award**") against the Debtor and Mr. Luftig, jointly and severally,

in the amount of $2,638,925.78, plus other damages based on certain future net income. (HLCA-0007, ¶¶28–29). On October 26, 2022, the Final Award was confirmed and a judgment was entered by the United States District Court for the Southern District of New York (the "**District Court**"). (HLCA-0008, ¶33). Mr. Luftig appealed the judgment confirming the Final Award because: (a) Mr. Luftig was not a party to the contract at issue; and (b) the breach of fiduciary duty claim was dismissed (*see* Second Cir. App. Case Nos. 22-3039 and 22-3056).

On December 1, 2022, the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**") in the U.S. Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") and elected to proceed under Subchapter V as a small business reorganization case. (*See* AA-30–AA-33). The Debtor also commenced an adversary proceeding (Adv. Pro. No. 22-01176 (JPM)) against Appellant and filed an emergency motion seeking entry of an order, *inter alia*: (i) extending the automatic stay under Bankruptcy Code § 362 to Mr. Luftig because he is the lifeblood of the Debtor and essential to an effective reorganization; and (ii) granting a temporary restraining order and preliminary injunction precluding FCP from any and all efforts and actions to enforce the Final Award or any judgment as against Mr. Luftig. (*See generally* AA-25–AA-29). On January 5, 2023, the Bankruptcy Court entered the *Memorandum Opinion and Order* (Adv. Pro. ECF Doc. No. 22) granting the Debtor's motion to

extend the automatic stay to Mr. Luftig, and directing the parties to submit an order consistent with its rulings, which was entered January 13, 2023 (Adv. Pro. ECF Doc. No. 23) (the "**Stay Order**"). *See Hal Luftig Co. v. FCP Ent. Partners, LLC (In re Hal Luftig Co.)*, Adv. Pro. No. 22-01176, 2023 Bankr. LEXIS 19 (Bankr. S.D.N.Y. Jan. 5, 2023); (AA-34–AA-36). Appellant did not appeal the Stay Order.

On March 1, 2023, the Debtor timely filed the *Debtor's Small Business Subchapter V Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. No. 55) (the "**Initial Plan**"), which included a third-party release of Appellant's direct claim against Mr. Luftig (the "**Luftig Release**") in exchange for a contribution from Mr. Luftig, including: (a) an immediate lump sum cash payment of $500,000 which would go directly to Appellant; (b) an employment agreement with the Debtor for the life of the plan (five (5) years); (c) subordination of claims held by Mr. Luftig for indemnification and prepetition loans (in excess of $1 million); (d) the "Back-stop Commitment" of $100,000 to support the feasibility of the Initial Plan; and (e) an agreement not to charge the Debtor rent for the space utilized in his home for the life of the Initial Plan (the "**Luftig Contribution**"). (*See generally* HLCA-0068– HLCA-0090).

On May 31, 2023, the Bankruptcy Court entered and approved the *Stipulation and Order Allowing Unsecured Claim of FCP Entertainment Partners, LLC* (ECF Doc. No. 81), liquidating the unliquidated portion of Appellant's claim, and granting

Appellant an allowed general unsecured claim in the total amount of $2,862,776.00. (HLCA-0114– HLCA-0117).

On July 11, 2023, the Bankruptcy Court conducted an evidentiary hearing to consider confirmation of the Initial Plan, at which Mr. Luftig and the Debtor's financial advisor were cross-examined. (*See* HLCA-0278). Neither the Office of the United States Trustee (the "**U.S. Trustee**") nor Appellant offered evidence to support their objections, and *both conceded that without the Luftig Release the Initial Plan was confirmable*. (*See* HLCA-0373, 95:2–11; HLCA-0407, 129:8–12; HLCA-0410, 132:6–8; HLCA-0413, 135:19–25; HLCA-0414, 136:1–4).

On November 22, 2023, the Bankruptcy Court issued the *Memorandum Opinion and Order on Confirmation of Small Business Plan of Reorganization Under Chapter 11* (ECF Doc. No. 115) (the "**Proposed Findings**"), which, *inter alia*, directed the Debtor to file an amended plan to narrow the release language, made certain findings of fact and conclusions of law with respect to the confirmation of the Initial Plan, and submitted certain proposed findings of fact and conclusions of law with respect to the Luftig Release to be entered on a final basis by the District Court. (*See generally* AA-37–AA-105). The Bankruptcy Court submitted the proposed finding that based on the *Purdue III* factors and equitable considerations (which also supported the Stay Order), unusual circumstances existed that rendered the Luftig Release important to the success of the Initial Plan, subject to the required

amendments. (AA-104).

On March 22, 2024, the District Court entered an Order rejecting the Bankruptcy Court's Proposed Findings, and denying confirmation of the Initial Plan based solely on the failure to satisfy one factor required for the Luftig Release (ECF Doc. No. 144). (*See generally* AA-148–AA-158). The Debtor filed a motion with the District Court seeking authority to pursue an interlocutory appeal, and also filed a notice of appeal as of right with the United States Court of Appeals for the Second Circuit. (*See* AA-164). On April 30, 2024, the District Court entered an Order denying the Debtor's motion to certify an appeal, and shortly thereafter the Debtor stipulated to dismiss its direct appeal. (*See id.*).

On July 25, 2024, the Debtor filed the *Second Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. No. 155) (the "**Second Amended Plan**"), which left the Stay Order in place to ensure the Debtor's successful reorganization, only through the life of the plan. (*See generally* HLCA-0585–HLCA-634). On November 15, 2024, Appellant filed an objection (ECF Doc. No. 170) to confirmation.

Prior to the confirmation hearing, Debtor's counsel requested a one-day adjournment. (*See* HLCA-0877–HLCA-0880). The U.S. Trustee required the Debtor to revise language in the Second Amended Plan to clarify that the Debtor was not seeking to extend the automatic stay to Mr. Luftig for a period longer than the Debtor

would be entitled to the protections of the stay. (HLCA-1184, 12:6–9). On November 21, 2024, the Debtor filed the *Third Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. No. 172) (the "**Third Amended Plan**") with the specific revisions requested by the U.S. Trustee. (*See generally* AA-159–AA-181). In support of confirmation, on November 26, 2024, the Debtor filed the: (a) *Memorandum of Law (I) in Support of Confirmation of Debtor's Third Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (ECF Doc. No. 172), and (II) in Response to the Objection to Confirmation Filed by FCP Entertainment Partners, LLC (ECF Doc. No. 170)* (ECF Doc. No. 173) (AA-182–AA-212); (b) *Declaration of Brian Ryniker (I) in Support of Confirmation of Debtor's Third Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (ECF Doc. No. 172), and (II) in Response to the Objection to Confirmation Filed by FCP Entertainment Partners, LLC (ECF Doc. No. 170)* (ECF Doc. No. 174) (HLCA-0881–HLCA-0886); and (c) *Declaration of Hal Luftig (I) in Support of Confirmation of Debtor's Third Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (ECF Doc. No. 172), and (II) in Response to the Objection to Confirmation Filed by FCP Entertainment Partners, LLC (ECF Doc. No. 170)* (ECF Doc. No. 175) (HLCA-0887–HLCA-1106). The Third Amended Plan does not include the Luftig Release (neither did the Second Amended Plan), but Mr. Luftig

7

agreed to include all aspects of the Luftig Contribution other than the $500,000.

On December 11, 2024, Appellant filed an untimely objection (ECF Doc. No. 178) stating that it would consent to confirmation, but only if it were confirmed under Bankruptcy Code § 1191(a) as a consensual plan so that the Debtor would obtain its discharge at confirmation. (*See generally* HLCA-1106–HLCA-1108). Appellant did not submit a changed ballot accepting the Third Amended Plan, and any conditions would be void.

On December 12, 2024, the Debtor filed the *Supplemental Declaration of Sheryl P. Giugliano Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Debtor's Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. No. 179) (the "**Supplemental Voting Declaration**") (HLCA-1109–HLCA-1110) and *Debtor's Reply in (I) Further Support of Confirmation of Debtor's Third Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, and (II) Response to FCP's Untimely and Unauthorized Response to Confirmation of Debtor's Third Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. No. 180) (HLCA-1111–HLCA-1116). The Supplemental Voting Declaration clarified that confirmation was nonconsensual due to valid ballots rejecting the Third Amended Plan, even if Appellant had attempted to strategically change its vote (it had not effectively done so). (*See* HLCA-1109–

8

HLCA-1110).

On January 10, 2025, Appellant filed a *Final Objection to Confirmation of the Amended Plan* (ECF Doc. No. 190), for the first time arguing the Third Amended Plan was not fair and equitable. (*See generally* AA-213–AA-218). That objection was devoid of any evidence or facts. None of Appellant's objections ever argued that the duration of the plan payments was unreasonable or contrary to the Bankruptcy Code. The U.S. Trustee did not object to confirmation of the Third Amended Plan.

On January 15, 2025, the Bankruptcy Court held an evidentiary hearing to consider the Third Amended Plan. (*See* HLCA-1173–HLCA-1175). Again, Appellant did not offer any evidence, and withdrew its objection to the Second Amended Plan. (*See id.*; HLCA-1198, 26:1–6). On February 24, 2025, the Honorable John. P. Mastando III issued the *Memorandum Opinion and Order on Confirmation of Debtor's Third Amended Small Business Plan of Reorganization Under Chapter 11* (ECF Doc. No. 195) (the "**Memorandum Opinion**"), confirming the Third Amended Plan. (AA-219–AA-259). On March 6, 2025, the Bankruptcy Court entered the *Order Confirming Debtor's Third Amended Small Business Plan of Reorganization (ECF Doc. No. 172) Pursuant to 11 U.S.C. §§ 1129 and 1191 and Court's Memorandum Opinion and Order (ECF Doc. No. 195)* (ECF Doc. No. 197) (the "**Confirmation Order**"). (AA-260–AA-267). On March 20, 2025, Appellant filed this appeal (AA-268–AA-278), but did not seek a stay.

The conditions precedent to the effective date of the Third Amended Plan occurred on March 21, 2025 (the "**Effective Date**"). (AA-280). On March 24, 2025, the Debtor filed the *Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date Under Debtor's Third Amended Small Business Plan of Reorganization, and (III) Certain Deadlines* (ECF Doc. No. 199). (AA-279–AA-281). In April 2025, Appellant deposited its initial distribution, and the Debtor substantially consummated the Third Amended Plan.

## STANDARD OF REVIEW

"A bankruptcy court's decision to confirm a plan of reorganization is reviewed for abuse of discretion." *In re Kirwan Offices, S.à.r.l.*, 592 B.R. 489, 500 (S.D.N.Y. 2018). A bankruptcy court abuses its discretion when it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or render[s] a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal citations omitted); *see Six West Acquisition, Inc. v. Loews Cineplex Ent. Corp.*, 286 B.R. 239, 248 (S.D.N.Y. 2002) ("[A] bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings.") (internal quotations omitted).

Conclusions of law are reviewed *de novo*, and findings of fact are reviewed for "clear error." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482–83 (2d Cir.

2012). "A finding of fact is clearly erroneous if the court is left with the definite and firm conviction that a mistake has been committed." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 346 (S.D.N.Y. 2007). Importantly, "clear error standard is a deferential one, and if the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *In re Motors Liquidation Co.*, 829 F.3d 135, 158 (2d Cir. 2016) (internal quotations omitted).

## SUMMARY OF THE ARGUMENT

First, the Bankruptcy Court correctly held that the extension of the automatic stay to a debtor's sole shareholder only for as long as the stay remains in effect for the Subchapter V debtor is permissible under applicable law. The issue appears to be one of first impression, but that is only because: (a) until recently more expansive relief existed — *i.e.*, third-party releases; and (b) Subchapter V is relatively new. This does not render the Bankruptcy Court's decision improper. In fact, the plain language of the Bankruptcy Code, settled law, and the law of the case support the Bankruptcy Court's decision. Indeed, at least one bankruptcy court cited favorably to Judge Mastando's opinion and reached the same decision with similar facts.

Second, the Bankruptcy Court correctly found that the Third Amended Plan, with the Stay Order in place through the five-year payout, is fair and equitable. On

the one hand, Appellant offered no fact, evidence, or viable legal argument to the contrary. The Debtor on the other hand offered multiple declarations by its financial advisor, financial projections, a liquidation analysis, and compelling testimony confirming the Third Amended Plan is fair and equitable under the Bankruptcy Code. That Appellant is unhappy with the result is not a basis for overturning the well-grounded decision of the Bankruptcy Court. The Third Amended Plan hardly amounts to a discharge or release — the U.S. Trustee would surely have joined in Appellant's objections if that were the case. Mr. Luftig will work for the next five (5) years to generate profits that will go almost exclusively to Appellant, and then after will have to defend judgment enforcement efforts by Appellant.

Third, this appeal is equitably moot because the Third Amended Plan is substantially consummated, Appellant deposited its distribution check, and Appellant failed to seek a stay pending appeal. This Court should not reverse the Confirmation Order in light of fairness concerns.

## **<u>ARGUMENT</u>**

### I. **The Bankruptcy Court Did Not Err in Holding That the Extension of the Automatic Stay to a Debtor's Sole Shareholder Over the Life of a Plan Is Permissible Under the Bankruptcy Code and Applicable Law.**

The Bankruptcy Court ruled correctly. Appellant's challenge of the Confirmation Order first takes issue with the extension of the automatic stay to Mr. Luftig over the five (5 ) year duration of the Third Amended Plan — a form of relief

often utilized by bankruptcy courts – which Appellant mischaracterizes as "wholly unprecedented and improper." Appellant's Brief, at p.10. Appellant fails to muster any plausible explanation as to why the stay extension was an abuse of the Bankruptcy Court's discretion. Appellant does not, and cannot, articulate why the Bankruptcy Court's ruling as to that issue constitutes an erroneous view of the law, and encourages this Court to disturb the Confirmation Order for no valid reason.

First, the extension of the automatic stay to Mr. Luftig was and is necessary to the success of the Third Amended Plan. Second, the extension of the stay is consistent with applicable law — *i.e.*, the Stay Order (entered in December 2022 and never appealed), the Bankruptcy Code, and relevant case law. Indeed, since the Bankruptcy Court's entry of the Confirmation Order, at least one other bankruptcy court presented with a similar issue has cited favorably to Judge Mastando's Memorandum Opinion and agreed that the extension of the automatic stay to a non-debtor over the duration of a Subchapter V plan is permissible. Remarkably, this is the first time Appellant has objected to the duration of the Third Amended Plan, which is the same duration as the Initial Plan and the Second Amended Plan. It is irrelevant whether the Debtor's plan is three (3) years or five (5) years; either duration si supported by the provisions of Bankruptcy Code § 1191(c).

A. *The Extension of the Automatic Stay to Mr. Luftig Is Necessary for the Debtor's Successful Reorganization.*

The extension of the automatic stay to Mr. Luftig — relief granted in the first

days of the Debtor's Subchapter V case because the Bankruptcy Court immediately recognized that Mr. Luftig is the lifeblood of the Debtor's business operations — is necessary and essential. Although the protections of the stay are generally reserved for debtors, Appellant concedes (Appellant's Brief, at p.11) that a limited exception exists in this Circuit allowing the extension of the stay to non-debtors. As the Second Circuit recognized in *Queenie, Ltd. v. Nygard Int'l.*, 321 F.3d 282 (2d Cir. 2003), the bankruptcy court, pursuant to its equitable powers, may extend the automatic stay to a non-debtor "where a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate," such as in "actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *Queenie, Ltd.*, 321 F.3d at 287–88 (internal quotations omitted). Bankruptcy courts in this District may also conduct a traditional four-factor preliminary injunction analysis to consider the propriety of a stay extension to a non-debtor. *See Purdue Pharma L.P. v. Massachusetts*, 666 B.R. 461, 473 (Bankr. S.D.N.Y. 2024) (adopting the four-factor standard set forth in *In re Parlement Techs., Inc.*, 661 B.R. 722 (Bankr. D. Del. 2024)).

The Bankruptcy Court already determined when it entered the Stay Order, a final and non-appealable order, that the extension of the automatic stay to Mr. Luftig satisfied both tests. Consistent with *Queenie, Ltd.*, the Bankruptcy Court found sufficient identity between the Debtor and Mr. Luftig, and that Appellant's pursuit

of the Final Award as to Mr. Luftig "would have an immediate adverse impact on [the Debtor]'s reorganization efforts." *See Hal Luftig Co. v. FCP Ent. Partners, LLC (In re Hal Luftig Co.)*, Adv. Pro. No. 22-01176, 2023 Bankr. LEXIS 19, at *12 (Bankr. S.D.N.Y. Jan. 5, 2023). The Bankruptcy Court further found, consistent with *Purdue Pharma L.P. v. Massachusetts*, that the four prongs of the preliminary injunction test — *i.e.*, (i) likelihood of success on the merits, (ii) likelihood of irreparable injury absent the injunction, (iii) favorable balance of hardships, and (iv) no disservice of public interest — were satisfied. *See id.* at * 13–17. Appellant did not appeal these findings, did not reserve its rights under the Stay Order to contest the stay extension's continuance through the duration of the plan, and did not contest the portion of the Proposed Findings denying Appellant's request to terminate the extension of the stay. Accordingly, the extension of the stay to Mr. Luftig under the Stay Order is the law of the case. *See U.S. v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) ("[W]hen a court has ruled on an issue, 'that decision should generally be adhered to by that court in subsequent stages in the same case.'") (quoting *U.S. v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)); *see also County of Suffolk v. Stone & Webster Engineering Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) ("To the extent that the court imposes a condition that a party finds unacceptable, that party's recourse is either to retreat from the agreement, and continue the litigation or settlement negotiations, or to challenge the judicial condition on appeal within the time for appeal from the

judgment incorporating the condition." (internal citations omitted).

The Stay Order was law of the case, and yet the Bankruptcy Court — demonstrating the level of care with which it prepared the Memorandum Opinion — revisited these same tests and determined based on the evidentiary record that the conditions which justified the Stay Order continued to support extending the stay to Mr. Luftig through the duration of the Third Amended Plan. (AA-250–AA-251).

The Bankruptcy Court noted that "the record suggests, and [Appellant] does not dispute, that the enforcement of the Judgment against Mr. Luftig will have an immediate adverse economic effect on the debtor's estate." (AA-250). The Bankruptcy Court also found that the preliminary injunction test was once again satisfied based on the "extraordinary circumstances of [the] case." (AA-253). The Debtor provided evidence, both in the form of Mr. Luftig's declarations and sworn testimony, that, among other things: (i) Mr. Luftig is still one of three employees of the Debtor, and remains its president and sole shareholder; (ii) Mr. Luftig has artistic, financial, and managerial control over each of the Debtor's current legacy production projects because he is the sole or co-lead producer of all those titles; and (iii) the Debtor's ability to succeed in developing revenue-generating projects depends entirely on Mr. Luftig's ability to develop and produce shows and to pursue new opportunities. (AA-251). The Plan will not succeed if Mr. Luftig is chased down by Appellant's judgment enforcement efforts — which Appellant has confirmed it

seeks to do immediately, even though it is not in its own economic interest to do so.

Accordingly, Appellant's contention that the relevant facts of this case do not rise to the "rare" and "exceptional" instances necessary to warrant stay extensions to non-debtors is contrary to the evidentiary record(Appellant's Brief, at p.11). The stay extension more than satisfies the relevant standards accepted in this District.

Moreover, the Bankruptcy Court found that this case remains unique and exceptional because of, in part, Appellant's vitriolic motivations. (*See* AA-101 ("[T]his case is unique and 'exceptional' because Appellant, the Debtor's largest creditor, is apparently willing to: (i) incur the costs concomitant with further litigation; and (ii) derail a Plan that would purportedly *optimize its own recovery* (and the recovery of every other creditor) in order to either drive the Debtor into Chapter 7 or drive the Debtor's principal into bankruptcy himself.") (emphasis in original)). To the extent Appellant takes issue with these findings, it cannot be said that the Bankruptcy Court's account of the record was clearly erroneous, and this Court should defer to the Bankruptcy Court with respect to these findings. *See In re Motors Liquidation Co.*, 829 F.3d 135, 158 (2d Cir. 2016).

Last, Appellant argues for the first time on appeal that the duration of the Third Amended Plan is objectionable. Appellant's argument must be ignored. *See Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 401 (2d Cir. 1992). The exceptions to the general rule prohibiting new arguments from being

17

raised on appeal – to avoid "manifest injustice" or where no additional fact-finding would be required --- are largely unsatisfied. *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 302 (2d Cir. 1996). There is nothing manifestly unjust about the Bankruptcy Court enforcing the Bankruptcy Code provisions allowing for a five-year plan, *see infra*, or Appellant waiting an additional two years to enforce its rights. Further, there is no evidence that Appellant argued or that additional fact-finding would yield a different analysis or decision.

   B. *The Extension of the Automatic Stay to Mr. Luftig Is Consistent with Applicable Law and Has Been Followed by at Least One Other Court.*

The Third Amended Plan does not afford Mr. Luftig stay protections in excess of what the Debtor is entitled to receive under the Bankruptcy Code. Appellant takes issue with the objective mechanics of how the Bankruptcy Code operates with respect to the termination of the automatic stay in this Subchapter V case, but that is not an erroneous view of the law by the Bankruptcy Court let alone a compelling basis to unwind the Confirmation Order.

Under Bankruptcy Code § 362(c)(2), the automatic stay continues until the earliest of (i) the closure of the case, (ii) the dismissal of the case, or (iii) the time a discharge is granted or denied. *See* 11 U.S.C. § 362(c)(2). Bankruptcy Code § 1192 provides that under a nonconsensual plan confirmed under § 1191(b), a debtor does not receive its discharge until the "last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court." 11 U.S.C. § 1192.

Here, the Debtor sought confirmation under Bankruptcy Code §1191(b) because Appellant and others voted to reject the Third Amended Plan (even if Appellant had attempted to change its vote, which it did not, other creditors voted to reject). (HLCA-1109–HLCA-1110). Accordingly, the earliest opportunity for termination of the automatic stay as to the Debtor will be when the discharge is granted, at the end of the life of the plan. Further, the Stay Order does not state a termination date for the stay extension, and Appellant fails to articulate any reason why these statutory mechanics cannot, as a matter of law, also apply to the automatic stay as to Mr. Luftig.

The Bankruptcy Court specifically discussed whether the five-year duration of the stay extension was permissible, and found such duration to be firmly rooted in the letter and spirit of Bankruptcy Code § 362(c)(2). (AA-248–AA-250). Although Appellant attacks the Bankruptcy Court's additional reliance on the preliminary injunction granted in *Purdue Pharma L.P. v. Massachusetts*, in which a non-debtor stay extension endured for over five years, Appellant fails to articulate how the stay extension's duration deviates from the provisions of Bankruptcy Code § 362(c)(2). *See* Appellant's Brief, at pp.13–14. Even acknowledging that the duration of a stay extension could amount to a preliminary injunction (AA-249–AA-250), the Bankruptcy Court properly conducted the requisite analysis, and, therefore, any argument that the order cited from *Purdue Pharma L.P. v.*

*Massachusetts* is inapposite is of no moment to the conclusion reached by Judge Mastando here.

Furthermore, while Subchapter V reorganizations ought to consummate expeditiously, to say that this goal trumps the plain language of the Bankruptcy Code and functions to prohibit Mr. Luftig's stay extension over the life of the Third Amended Plan is nonsensical. As Judge Mastando's comprehensive Memorandum Opinion conveyed, numerous competing interests are at play in small business bankruptcies, and the extraordinary circumstances of this case justify setting aside the interests of forced expediency. Indeed, the protracted litigation that has consumed this case — which is almost exclusively on account of Appellant — is indicative of what faces Mr. Luftig for the next five years absent the Stay Order.

Any argument by Appellant that the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) is an "intervening change in law" is a purposeful effort to conflate an alleged impermissible nonconsensual release with the permissible, lawful, and justified extension of the automatic stay to Mr. Luftig. Indeed, when the Debtor's discharge is granted and the automatic stay terminates at the end of the Third Amended Plan, the extension of the stay to Mr. Luftig will terminate as well.

While the extension of the automatic stay to Mr. Luftig over the duration of the Third Amended Plan may have been an "issue of first impression" before the

Bankruptcy Court (AA-249), at least one other bankruptcy court has since agreed with the Bankruptcy Court's ultimate disposition, reflecting an emerging consensus in favor of the outcome reached by Judge Mastando's analysis. This cuts against Appellant's contention that there are "no cases where a non-debtor was granted protection from creditors for the life of the plan" (Appellant's Brief, at p.11) and lends compelling credence to the Bankruptcy Court's conclusion of law.

Appellant ignores the May 13, 2025 memorandum order and opinion in *In re Miracle Rest. Group, LLC*, Case No. 24-11158, 2025 WL 1400915 (Bankr. E.D. La. May 13, 2025), from the Honorable Meredith S. Grabill. Similar to the instant case, the issue concerned a Subchapter V plan which sought to enjoin a creditor from pursuing legal action against the debtor's principals for the three-year duration of the plan. Not only did Judge Grabill cite positively to the Memorandum Opinion — agreeing that the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.* does not prohibit bankruptcy courts from confirming plans that temporarily enjoin creditors' collection efforts against non-debtors — Judge Grabill reached the same outcome after conducting nearly the same analyses as Judge Mastando, and granted the stay extension over the duration of the plan. *Miracle Rest. Grp.*, 2025 WL 1400915, at *4.

Notably, the bankruptcy court in *Miracle Rest. Group* relied on the importance of one of the principals to the day-to-day operations of the debtor, finding not only

that the principal was vital to the debtor's successful organization but also enjoyed an identity of interest with the debtor in satisfaction of the Fifth Circuit's "unusual circumstances" test for warranting the issuance of a temporary injunction. *Id.* at *9. Judge Grabill also tested the propriety of the temporary injunction under the traditional four-factor preliminary injunction analysis. *See id.* Finally, the bankruptcy court agreed that the creditor's purported harm was more or less that it would "be forced to accept Plan payment terms that it does not like," a harm deemed minimal in the face of the potential for a failed reorganization without an injunction. *Id.* at *10.

Accordingly, Appellant's reliance on *Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contr. of N.Y., LLC*, 536 B.R. 48 (E.D.N.Y. 2015) is misplaced. Appellant's attempt to characterize *Pavers* as dispositive of the issue before this Court is misplaced, particularly because the *Pavers* court's opinion on the issue is *dicta* and not part of it substantive holding. *See Pavers*, 536 B.R. at 52. Even considering the hypotheticals discussed by the *Pavers* court, the opinion miss the mark. Creditors are not necessarily better off where individual creditors are permitted to pursue their claims against a non-debtor defendant, because the assumption that such circumstances would reduce the debt load on the Debtor and thereby improve creditor recoveries is false when a non-debtor defendant is the lifeblood of the Debtor, as found here by Judge Mastando. On the contrary, as Judge

Grabill noted, where "the fortunes of the Debtor and the Insiders are inextricably intertwined," as is the case here, the issuance of a temporary injunction "also serves to protect the Debtor's numerous other creditors and their rights to receive equitable distributions under the Plan." *In re Miracle Rest. Grp.*, 2025 WL 1400915 at *10.

## II.    The Bankruptcy Court Did Not Err in Its Finding That the Debtor's Third Amended Plan Is Fair and Equitable.

Appellant's challenge that the Third Amended Plan is unfair and inequitable relies on arguments addressed and discredited at length by the Bankruptcy Court, and is inconsistent with Appellant's own remarks with respect to the Initial Plan, which was substantially similar to the Third Amended Plan except for the Luftig Release. The Third Amended Plan, inclusive of the extension of the automatic stay as to Mr. Luftig, provides appropriate mechanics and remedies that more than satisfy the burden of showing that the Debtor can realistically carry out its plan. That Appellant now claims to dislike like terms of the Third Amended Plan that it previously agreed were fair and equitable does not suddenly render it deficient under the statutory requirements of Bankruptcy Code § 1191(b).

A Subchapter V plan of reorganization may be confirmed as a nonconsensual plan in the face of rejection by impaired classes if the plan "does not discriminate unfairly, and is fair and equitable" with respect to each impaired rejecting class. 11 U.S.C. §§ 1191(b)–(c). Such a plan is fair and equitable under Bankruptcy Code § 1191(b) if, pursuant to Bankruptcy Code § 1191(c), as of the effective date of the

plan: (i) the plan includes the debtor's contribution of all of its projected disposable income over the life of the plan (three to five years); and (2) either the debtor will make all payments under the plan or, if there is a "reasonable likelihood" that the debtor will able to do so, then the plan provides for "appropriate remedies." 11 U.S.C. § 1191(c).

First, Appellant offered no evidence at the confirmation hearing to contest that the plan is fair and equitable as to Appellant, and that the Debtor is contributing all its disposable income to the plan. Second, Mr. Luftig is still providing the Back-Stop Commitment supporting feasibility, as required by Bankruptcy Code § 1191(c).

Third, prior to the confirmation hearing on the Third Amended Plan, Appellant made statements to the contrary upon which the Bankruptcy Court relied at the July 11, 2023 confirmation hearing on the Initial Plan, which was substantially similar to the Third Amended Plan except for the Luftig Release. *See McCarron v. Andrews et al. (In re Andrews)*, 385 B.R. 496, 502 (Bankr. D. Conn. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Specifically, Appellant took the position that the Initial Plan would be confirmable absent the Luftig Release — *i.e.*, the Third Amended Plan is confirmable. (HLCA-0373, 95:2-11 ("Yes, Your Honor. I mean, I think, except for in the pretrial order, our dispute is really limited."); HLCA-0410, 132:6-8 ("There's a plan here that's confirmable without the release and the companion components that go with it or demands that go with it."); HLCA-

24

0413, 135:19-22 ("So, again, it's our view, Your Honor, that this debtor, you know, can survive, has a confirmable plan on its own, but inclusion of the Luftig Release is inappropriate and so we would ask that you deny confirmation.")).

Fourth, Appellant believes that it is somehow entitled to special treatment because it is the largest unsecured creditor in the case. This is not a basis on which to disturb the Confirmation Order and derail a confirmable plan.

Last, the extension of the automatic stay to Mr. Luftig cannot be likened in good faith to a discharge because Appellant remains free to pursue its claim against him upon the completion of the Debtor's payments under the Third Amended Plan. It bears emphasis that the Third Amended Plan does not impose a third-party release, and Appellant cannot liken a *temporary* injunction to an object of permanence. Unlike the temporary injunction imposed under the Third Amended Plan, a discharge "void[s] any past or future judgments on the discharged debt [and] operat[es] as an injunction . . . prohibit[ing] creditors from attempting to collect or to recover the debt." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 215 (2024) (quoting *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004)); *see also* 11 U.S.C. § 1141(d)(1)(A). Again, *Purdue Pharma* only held that "[t]he bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seek to discharge claims against a nondebtor without the consent of affected claimants." *Purdue Pharma*, 603 U.S. at

25

204. The Supreme Court did not prohibit the ability of a bankruptcy court, by the exercise of its equitable powers, to *temporarily* enjoin a creditor's collection efforts against a non-debtor. *See In re Miracle Restaurant Group, LLC*, Case No. 24-11158, 2025 WL 1400915, at *4 (Bankr. E.D. La. May 13, 2025) ("This Court agrees with the *Hal Luftig* court that an argument that *Purdue Pharma* prohibits bankruptcy courts from, as part of a plan, temporarily enjoining creditors' collection efforts against non-debtors is without merit" (internal quotations omitted)).

The Third Amended Plan need not provide further remedies than what it already provides as protection to Appellant. Appellant's concern over the potential for Mr. Luftig's dissipation of assets over the life of the Third Amended Plan is adequately addressed therein. As the Bankruptcy Court acknowledged, the Third Amended Plan holds Mr. Luftig to account in the event of plan payment default by the inclusion of the Back-Stop Commitment. Moreover, as a condition precedent to the Effective Date, the Third Amended Plan required confirmation from Mr. Luftig as to the availability of adequate reserves to cover the Back-Stop Commitment. (AA-173). To suggest other and further remedies are required to "guarantee[]" Appellant's opportunity to recover the full amount of its claim (Appellant's Brief, at p.17) encourages this Court to stretch Bankruptcy Code §§ 1191(b) and (c) beyond what is appropriate, and give more favorable treatment to Appellant at the cost of the other creditors. (*See* AA-258 ("[I]t inappropriate to impose any requirement that

26

would effectively allow an objecting unsecured creditor to derail an otherwise confirmable plan — as Appellant seeks to do here — solely because that creditor holds the largest unsecured claim against the estate.")).

### III. The Appeal Is Equitably Moot Because the Third Amended Plan Is Now Substantially Consummated.

Finally, the instant appeal is equitably moot because the Third Amended Plan has been substantially consummated, as that term is defined under the Bankruptcy Code. Appellant elected not to seek a stay of the implementation of the Third Amended Plan, and the Debtor proceeded to take the steps necessary consummate the plan. *See In re Prudential Lines, Inc.*, 170 B.R. 222, 244 (S.D.N.Y. 1994) ("[I]t has long been held that in the absence of a stay pending appeal of the plan confirmation, the bankruptcy court is entitled to implement the plan."). As a result, both the Debtor and Mr. Luftig have taken various actions in reliance on the Confirmation Order, including an initial distribution to Appellant. As a matter of law, the Third Amended Plan is substantially consummated, and therefore raises a presumption of equitable mootness that Appellant cannot rebut.

"In this circuit, an appeal is presumed equitably moot where the debtor's plan of reorganization has been substantially consummated." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482 (2d Cir. 2012). Under the Bankruptcy Code, the term "substantial consummation" is defined to require that (i) all or substantially all of the property proposed to be transferred by the plan are transferred, (ii) the successor

company has assumed the business or management of the property dealt with by the plan, and (iii) distributions have commenced under the plan. 11 U.S.C. § 1101(2).

Here, the conditions requisite to the substantial consummation of the Third Amended Plan are satisfied. First, all property of the Debtor, tangible and intangible, reverted to the Debtor as the Reorganized Debtor, free and clear of all claims, on the Effective Date. (*See* AA-168). Second, in accordance with Bankruptcy Code § 1181(a), Mr. Luftig continues to own the interests in and manage the property of the Reorganized Debtor as sole shareholder and President, and the Debtor is serving as the disbursing agent. (*See* AA-168; AA-262). Third, the Debtor received $50,000.00 from Mr. Luftig as a settlement payment, from which Appellant received and deposited an initial *pro rata* distribution with the remainder being paid to the holders of allowed Class 4 claims on a *pro rata* basis. (*See* AA-173).

"Substantial consummation raises the presumption that an appeal is moot." *Six West Acquisition, Inc. v. Loews Cineplex Ent. Corp.*, 286 B.R. 239, 248 (S.D.N.Y. 2002) (citing *In re 1515 Broadway Assocs., L.P.*, 153 B.R. 400, 405 (S.D.N.Y. 1993)). That presumption may only be overcome if:

> (1) the court can still provide effective relief; (2) granting relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (3) granting relief will not unravel the transactions that formed the basis of the plan or reorganization; (4) the parties that might be adversely affected by a grant of relief have received notice and an opportunity to be heard; and (5) the entity seeking relief has diligently pursued a stay of execution of the plan throughout the proceeding.

*See id.* (citing *In re Chateaugay Corp.*, 94 F.3d 772, 776 (2d Cir.1996)). Here, Appellant is unable to rebut the presumption.

First, granting the relief requested by Appellant will certainly affect the Debtor's potential re-emergence as a reorganized entity. Mr. Luftig's stay extension forms the basis for the stability of the projected disposable net income that will fund the Third Amended Plan. Absent the stay extension over the duration of the Third Amended Plan, the relief sought by Appellant will frustrate the Debtor's successful reorganization. Second, reversing the Confirmation Order would cause several transactions and initial disbursements paid on the Effective Date to be unraveled, introducing unnecessary complications to the Debtor's reorganization efforts. Third, those holders of Class 4 claims who received initial *pro rata* distributions from Mr. Luftig's $50,000.00 settlement payment have neither had notice nor the opportunity to be heard on the issue. Last, Appellant made no effort whatsoever to diligently pursue a stay of Third Amended Plan's execution pending this appeal. *Freeman v. Journal Register Co.*, 452 B.R. 367, 373 (S.D.N.Y. 2010) ("[C]ourts in this Circuit have emphasized the importance of an appellant seeking a stay." (citing *Loral Stockholders Protective Comm. v. Loral Space & Commc'ns Ltd. (In re Loral Space & Commc'ns Ltd.)*, 342 B.R. 132, 141 (Bankr. S.D.N.Y.2006) ("[S]eeking a stay is of the utmost importance to an appellant desiring to preserve an appeal of a confirmation order."))). "The failure to seek a stay of the confirmation order

pending appeal, with the result that the reorganization is substantially consummated, in particular lends itself to a finding that an appeal is moot." *Compania Int'l Financiera S.A. v. Calpine Corp. (In re Calpine Corp.)*, 390 B.R. 508, 517 (S.D.N.Y. 2008). "In the absence of any request for a stay, the question is . . . also whether we should provide such relief in light of fairness concerns." *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 145 (2d Cir. 2005). This Court should find that this appeal is equitably moot for failure to satisfy the necessary factors.

## CONCLUSION

The Bankruptcy Court correctly held that: (a) the extension of the automatic stay to Mr. Luftig solely for the duration of the Third Amended Plan is appropriate, lawful, and necessary for the Debtor's successful reorganization; and (b) the Third Amended Plan is fair and equitable. Last, the appeal asserted by Appellant without having sought a stay is equitably moot, and another example of Appellant's efforts to derail the Debtor's business with a half-baked legal strategy. Based on the above, Appellee respectfully requests this Court affirm the Confirmation Order.

Dated:  Uniondale, New York         **RUSKIN MOSCOU FALTISCHEK, P.C.**
       June 20, 2025                    *Attorneys for Appellee*

                              By: */s/ Sheryl P. Giugliano*
                                  Sheryl P. Giugliano
                                  Nicolas A. Florio

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limit of Bankruptcy Rule 8015(a)(7)(B) because, excluding the parts of the brief exempted by Bankruptcy Rule 8015(g), this document contains 7,397 words. This brief complies with the typeface requirements of Bankruptcy Rule 8015(a)(5) and the type-style requirements of Bankruptcy Rule 8015(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman size 14 font.

/s/ *Sheryl P. Giugliano*
Sheryl P. Giugliano
Nicolas A. Florio