**ORAL ARGUMENT REQUESTED**

# United States District Court

*for the*

# Southern District of New York

Case No. 25-cv-02580-MMG

In re:

HAL LUFTIG COMPANY, INC.,

*Debtor.*

FCP ENTERTAINMENT PARTNERS, LLC,

*Appellant,*

– against –

HAL LUFTIG COMPANY, INC.,

*Appellee.*

*On Appeal from Order of U.S. Bankruptcy Court, SDNY,
Hon. John P. Mastando III, Bankr. Case No. 22-11617-JPM
(Adv. Pro. No. 22-01176-JPM)*

## REPLY BRIEF FOR APPELLANT

SVETLANA K. IVY
LIPPES MATHIAS LLP
*Attorneys for Appellant*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
cfisher@lippes.com
sivy@lippes.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ......................................................................................... 1

ARGUMENT ............................................................................................... 3

  POINT I ..................................................................................................... 3

    EXTENSION OF THE BANKRUPTCY STAY TO A NON-DEBTOR FOR
    THE LIFE OF A FIVE-YEAR PLAN IS UNPRECEDENTED AND
    CONTRARY TO SETTLED LAW ............................................................. 3

  POINT II .................................................................................................... 7

    GRANTING NON-DEBTOR LUFTIG A STAY OF ANY ENFORCEMENT
    PROCEEDINGS WITHOUT IMPOSING ANY RESTRAINTS ON HIM IS
    PATENTLY NOT FAIR AND EQUITABLE .............................................. 7

  POINT III ................................................................................................. 10

    THIS APPEAL IS NOT EQUITABLY MOOT ...................................... 10

CONCLUSION .......................................................................................... 14

CERTIFICATE OF COMPLIANCE .......................................................... 16

<u>**TABLE OF AUTHORITIES**</u>

Page(s)

**CASES**

*In re Charter Communications, Inc.*,
    691 F.3d 482 (2d Cir. 2012)...................................................................... 10, 11

*In re Chateaugay Corp.*,
    10 F.3d 944 (2d Cir. 1993) ...............................................................................11

*Harrington v. Purdue Pharma L.P.*,
    603 U.S. 204 (2024) .......................................................................................3, 4

*In re La Paloma Generating Co. LLC*,
    609 B.R. 80 (D. Del. 2019) ...............................................................................10

*In re Miracle Rest. Group, LLC*,
    Case No. 24-11158, 2025 WL 1400915 (Bankr. E.D. La. May 13, 2025)....2, 5

*Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contr. of N.Y., LLC*,
    536 B.R. 48, 52 (E.D.N.Y. 2015)……………………………………………6

*In re Windstream Holdings, Inc.*,
    838 Fed. Appx. 634, 636 2021 WL 627502 (2d Cir. 2021)....................... 11,13

**STATUTES**

11 U.S.C. § 1191(b) .............................................................................................7

**FEDERAL RULES**

Fed. R. Bankr. P. 8015(a)(5)................................................................................16

Fed. R. Bankr. P. 8015(a)(6)................................................................................16

Fed. R. Bankr. P. 8015(a)(7)(B) .........................................................................16

Fed. R. Bankr. P. 8015(g) ....................................................................................16

## INTRODUCTION

Appellant FCP Entertainment Partners, LLC raises only one issue on this appeal – the propriety of the Bankruptcy Court granting bankruptcy stay protections to a non-debtor for the duration of a confirmed five-year bankruptcy plan without placing any restraints whatsoever on that non-debtor's ability to dissipate assets and without providing for any other protections to that non-debtor's creditors.

Appellee Hal Luftig Company, Inc. – the Debtor – does not contest that the Bankruptcy Court's action in this regard was unprecedented.  Indeed, the Debtor does not – and cannot – dispute that, as the Second Circuit has repeatedly stated, it is widely accepted that the automatic stay is limited to debtors and does not encompass non-bankrupt co-defendants. Unable to cite any authorities to warrant an affirmance, instead, Appellee confuses the issues by incorrectly characterizing FCP's position as not preserved and/or moot.  This is plainly not the case.  The extension of the temporary stay to Mr. Luftig pending the Bankruptcy proceedings is not "law of the case" on the issue at hand. It is not unheard of for courts to extend temporary stays to non-debtors prior to plan confirmation.  And when there was a proposed plan that included a release of liability for Mr. Luftig, FCP objected, and that plan was not approved by the Bankruptcy Court. The Third Amended Plan was the first time the Bankruptcy Court included language clarifying Mr. Luftig's protection from any enforcement efforts for the five-year life of the plan, and FCP

1

appealed that provision at its first and only opportunity. Thus, there are no preservation issues here.

Appellee also mistakenly characterizes FCP's position as challenging "the five-year payout provision" of the Third Amended Plan and contends that the appeal is moot. But FCP is not challenging the five-year payout provision or any other substantive provision in the Third Amended Plan that impacts the Debtor's rights and obligations or any payments. The only issue FCP brings up for review is the grossly unfair and inequitable grant of a stay to a non-Debtor who is not in any way restrained from dissipating assets by the Third Amended Plan. Under the applicable case law, the doctrine of equitable mootness does not preclude this appeal because this Court can order effective relief without unraveling any intricate transactions or altering any amounts received by any creditor under the confirmed plan.

*In re: Miracle Restaurant Group, LLC,* 2025 WL 1400915 (E.D. Louisiana), decided on May 23, 2025, illustrates precisely why this appeal is important and why, if left undisturbed, this case could change the legal landscape in Bankruptcy proceedings. It has been long-settled that only debtors get the benefit of bankruptcy stays. Mr. Luftig appears to be the first non-debtor to be granted protections from any judgment enforcement actions for the life of a confirmed bankruptcy plan in a published decision. Citing only to the Bankruptcy Court decision underlying this appeal as support, the Eastern District of Louisiana District Court followed suit and

granted another non-debtor similar protections for three years.  That case is also on

appeal.  There is no doubt that, should the determinations in this case and in *Miracle*

*Restaurant* be affirmed, many individuals will seek to obtain the benefits of a

bankruptcy stay without actually filing for bankruptcy – an outcome contrary to

public policy as articulated by the U.S. Supreme Court.

The Court held in *Harrington v. Purdue Pharma L.P.*, that a discharge that

"operates as an injunction . . . prohibiting creditors from attempting to collect or to

recover the debt" is intended to operate "only for the benefit of debtor against its

creditors and does not affect the liability of any other entity." 603 US 204, 215

(2024).  FCP respectfully submits that a non-debtor similarly should not benefit from

an extended injunction in a confirmed bankruptcy plan, especially where the

confirmed plan does not provide for any restraints on the non-debtor's ability to

dissipate assets during the stay extended to him.

## **ARGUMENT**

### **POINT I**

### **EXTENSION OF THE BANKRUPTCY STAY TO A NON-DEBTOR FOR THE LIFE OF A FIVE-YEAR PLAN IS UNPRECEDENTED AND CONTRARY TO SETTLED LAW**

Extension of the automatic stay over a non-debtor for the life of a confirmed

plan is not something contemplated nor permitted by the Bankruptcy Code, and the

Bankruptcy Court erred in extending such protections in this case – especially without providing any protections to the non-debtor's creditors.

Contrary to Appellee's intimations, FCP does not take issue with the duration of the Third Amended Plan or any rights and obligations the plan establishes for the Debtor.  Neither does FCP appeal the grant of a temporary stay to non-debtor Hal Luftig during the pendency of the Chapter 11 Case. The continuation of that stay for the life of the confirmed plan, however, is highly unusual and significantly prejudicial not only to FCP but any creditor of Mr. Luftig.  A five-year injunction insulating an individual who has not filed for bankruptcy from legal action is unprecedented and wholly unwarranted.

Debtor's accusations, such as that FCP purportedly has some "vitriolic motivations" (Appellee's Br. at 17), completely miss the point.  The only Debtor in this Bankruptcy proceeding is Hal Luftig Company, Inc.  If there are creditors with judgments against Hal Luftig personally, those creditors should have a right to pursue their claims against him because non-debtors generally do not get protections from enforcement proceedings. At the very least, Luftig should be restrained from dissipating or hiding assets for the duration of the stay to limit prejudice to his creditors.

In *Harrington v. Purdue Pharma L.P.*, the Supreme Court held that "the bankruptcy code does not authorize a release and injunction that, as part of a plan of

4

reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." 603 U.S. at 227. Appellee points out that *Harrington* involved a release rather than a stay, but the impact of the stay here is analogous to an effective discharge because Mr. Luftig is free to dissipate and shield assets without any limitations during the five-year stay.

Unsurprisingly, Appellee does not cite any authoritative or persuasive case law in support of extending bankruptcy protections to non-debtors within confirmed bankruptcy plans. Instead, Appellee cites to *In re Miracle Rest. Group, LLC*, a recent Bankruptcy Court Memorandum Order and Opinion issued in the Eastern District of Louisiana, which followed the Bankruptcy Court's holding here, cited no other support, and is also currently on appeal by a creditor on similar grounds as this appeal. No. 24-11158, 2025 WL 1400915 (Bankr. E.D. La. May 13, 2025). *Miracle Restaurant* is not binding on this Court and that decision is flawed for all of the same reasons as the underlying Bankruptcy decision here. Its only relevance to this appeal is that it exemplifies why the decision in this case needs to be reversed and/or modified. After no confirmed bankruptcy plans extended injunctions to non-debtors before the Bankruptcy Court's ruling here, *In re Miracle* followed quickly on its heels. If the Third Amended Plan is affirmed as is, more individuals will surely look to secure bankruptcy protections without having to file for bankruptcy.

*Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contr. of N.Y., LLC*, provides a framework for District Courts reviewing the propriety of a non-debtor's stay during the life of a confirmed bankruptcy plan, illustrating via hypotheticals that a stay is not properly extended for the life of confirmed plan if "creditors of a Chapter 11 debtor are better off if separate creditors of an affiliated non-debtor are allowed to pursue their non-debtor defendant and have their claims satisfied from the non-debtor defendants." 536 B.R. 48, 52 (E.D.N.Y. 2015). Stays are also not properly extended for the life of a confirmed plan "if there is one super-dominant creditor that effectively holds all or almost all of the estate's debt." *Id.* Both conditions are present here, so even if extension of the automatic stay to non-debtors for the life of a plan is permissible generally, this is not a case where such extension is appropriate.

Here, FCP holds approximately 85% of the Debtor's debt, and the financial projections attached to the Third Amended Plan do not contemplate payments being made until at least 2027 and FCP ever being satisfied in full.  If FCP were able to satisfy some or all of its debt from the assets of non-debtor Luftig, all of Debtor's creditors would have a better chance to have debt owed to them satisfied.

Whether the facts and circumstances here permit extension of the bankruptcy stay to non-debtor Luftig is a legal issue this Court can determine *de novo.*  FCP respectfully submits that no such extension is warranted, and the Third Amended

Plan should be modified accordingly. If the Luftig Injunction is not deleted altogether, then, as explained in Point II *infra*, it should at least be accompanied by restrictions on Luftig's use of his assets during the stay extended to him.

**POINT II**

**GRANTING NON-DEBTOR LUFTIG A STAY OF ANY ENFORCEMENT PROCEEDINGS WITHOUT IMPOSING ANY RESTRAINTS ON HIM IS PATENTLY NOT FAIR AND EQUITABLE**

Even if there could be some situations in which a non-debtor is entitled to a stay during the life of the plan, the fact that the Bankruptcy Court did not provide for any protections of Mr. Luftig's creditors in the meanwhile renders that aspect of the Third Amended Plan not fair or equitable, as required by 11 U.S.C. § 1191(b).

As a threshold matter, FCP sufficiently preserved its objection to extending a stay to Luftig individually for the life of the plan. FCP successfully objected to the Luftig Release – which was at issue in the Initial Plan. *See* AA-148 (Order rejecting the Initial Plan's inclusion of the Luftig Release and remanding the issue back to the Bankruptcy Court for further proceedings). The Third Amended Plan was the first time the Bankruptcy Court ruled that Mr. Luftig could not be subject to any enforcement proceedings for the duration of the plan and stated, "for the avoidance of doubt, the injunction obtained in adversary proceeding 22-01176 applies only to FCP." *See* Record on Appeal No. 2, pg. 37 (redline of changes submitted with the proposed Third Amended Plan). This language was not present in the Initial Plan,

7

the First Amended Plan, or the Second Amended Plan, and FCP appealed this issue at its first opportunity.

Debtor contends that FCP should take comfort in Mr. Luftig's confirmation of "the availability of adequate reserves to cover the Back-Stop Commitment" (Appellee's Br. at 26). This is plainly not the case and, if anything, highlights precisely why FCP and other creditors of the non-debtor are inadequately protected. The Backstop Commitment requires Luftig "to contribute up to an aggregate of $100,000.00" to fund the Third Amended Plan if the Debtor were to default on plan payments. *See* AA-175 (Third Amended Plan at 16). The judgment that FCP holds against Debtor and Luftig is $2,862,776, which means a best-case scenario for FCP would have Luftig paying approximately 3% of the FCP Claim under the Third Amended Plan. The contention that the Backstop Commitment renders the plan fair and equitable and provides any kind of assurance to FCP that it will be able to collect on a multi-million dollar judgment from Luftig in five years is laughable. The Third Amended Plan effectively gives Mr. Luftig five years to hide and maneuver any personal assets that FCP might otherwise pursue because it places no restrictions whatsoever on him while protecting him from enforcement actions. FCP takes no issue with the Third Amended Plan as it relates to the rights and obligations of the Debtor, but precluding FCP from pursuing its rights against Luftig individually

while not imposing any limitations on him in the meanwhile is neither fair nor equitable.

Debtor's argument that granting FCP protections would somehow "give more favorable treatment to [FCP] at the cost of other creditors" (*see* Appellee's Brief at 26), is also wrong. FCP does not seek to change any substantive portion of the Third Amended Plan and does not request any special preference or priority. Furthermore, while no other creditor in this case currently has a judgment against the Debtor or Luftig, imposing limitations on Luftig or oversight over his assets while he benefits from a bankruptcy stay would benefit all of his creditors, not just FCP.

While the permissibility of bankruptcy stays for non-debtors generally is a legal issue, equities are a matter of common sense and, in this instance, the inequity to be corrected is blatantly obvious. It is unquestionably unfair to grant Luftig – who has not filed for bankruptcy in his individual capacity – protections usually reserved for debtors, especially without providing for any protections or assurances to his creditors that he will not dissipate assets during the life of the plan.

For all of these reasons, the Luftig Injunction aspect of the Third Amended Plan is not fair or equitable and should be either deleted altogether or modified to impose some limitations of Luftig's use of assets during the stay extended to him.

## POINT III

## THIS APPEAL IS NOT EQUITABLY MOOT

Under settled Second Circuit case law, this appeal is not equitably moot.

"[A]n appeal is presumed equitably moot where the debtor's plan of reorganization has been substantially consummated." *In re Charter Communications, Inc.*, 691 F.3d 476, 482 (2d Cir. 2012). But the facts and circumstances here easily overcome that presumption in this case.

The doctrine of equitable mootness is grounded in the understanding that "[o]nce effective, reorganizations typically implement complex transactions requiring significant financial investment" the unwinding of which, in some circumstances, "would disrupt the effected plan or harm third parties." *In re La Paloma Generating Co. LLC*, 609 BR 80, 90 (D. Del. 2019). Where "third parties will not be harmed, nor is the Plan even remotely called into question," equitable mootness will not operate to defeat an appeal of a confirmed plan. *Id.* at 92.

An appeal of a confirmed bankruptcy plan is not equitably moot where:

> "(1) the court can still order some effective relief; (2) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (3) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the [b]ankruptcy [c]ourt; (4) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (5) the appellant pursued with diligence

> all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from."

*In re Windstream Holdings, Inc.*, 838 Fed. Appx. 634, 636, 2021 WL 627502 (2d Cir. 2021), citing *In re Chateaugay Corp.*, 10 F.3d 944, 953 (2d Cir. 1993).  "[I]n examining a debtor's contention that a claim is equitably moot, [the Court] cannot rely solely on the debtor's conclusory predictions or opinions that the requested relief would doom the reorganized company." *In re Charter Communications, Inc.*, 691 F.3d at 482 (2d Cir. 2012). Instead, a review of the aforementioned factors – dubbed the *Chateaugay* Factors – "requires an analytical inquiry into the likely effects of the relief an appellant seeks and must be based on facts." *Id*.

The first factor is whether "the court can still order some effective relief." *In re Windstream Holdings, Inc.*, 838 Fed. Appx. at 636. Here, the Court can indisputably order effective relief. Indeed, FCP is not looking to alter any rights or obligations of the Debtor, any priority or amounts due, or any payment dates in the Third Amended Plan.  FCP seeks only to modify the Third Amended Plan insofar as it extends non-debtor Luftig's stay for the life of the plan without any corresponding restrictions.  Indeed, if Debtor is so certain that no additional protections are necessary, there is no reason there should be any objection to Luftig being required to maintain a certain level of reserves or being subject to certain limitations as to his use of assets during the time he is benefiting from a bankruptcy stay.

11

The second factor courts consider is if "such relief will not affect the re-emergence of the debtor as a revitalized corporate entity." *In re Windstream Holdings, Inc.*, 838 Fed. Appx. at 636. This factor is also met. FCP is not seeking any relief that would compromise the re-emergence of the Debtor as a revitalized corporate entity. FCP merely seeks to preserve its ability to pursue its rights against a non-debtor. In the event the Court finds a stay as to a non-debtor is justifiable here, protections should be imposed to prevent harm to creditors of the non-debtor.

The third *Chateaugay* factor also weighs in FCP's favor because the relief FCP seeks "will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the [b]ankruptcy [c]ourt." *Id.* Debtor argues that reversing the Confirmation Order "would cause several transactions and initial disbursements paid on the Effective Date to be unraveled, introducing unnecessary complications to the Debtor's reorganization efforts." Appellee's Brief, pg. 29. But the relief FCP seeks has no bearing on payments, and no transactions would have to be unwound. Even if the entirety of the Plan were to be unwound for any reason, there has been only one payment of $50,000 made so far and no future payments are anticipated for several years. Thus, even if necessary, unwinding would not rise to the level of an unmanageable or uncontrollable situation.

12

The fourth "notice" *Chateaugay* factor is similarly satisfied here because any parties "who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings." *Id.* Luftig is the sole individual to be affected by the relief requested by FCP, and he indisputably had both notice and an opportunity to be heard on this issue. Luftig's attorney filed an appearance on the Chapter 11 case docket and received ample notice of FCP's filing of the notice of appeal, as well as of the filing of FCP's Statement of Issues Presented, which apprised him precisely of the nature of this appeal. All creditors who appeared and/or were represented in the Bankruptcy proceeding and subject to the Third Amended Plan similarly received the Notice of Appeal filed on the Bankruptcy Court docket. While they are not adversely affected by the relief sought, if they wanted to participate in this appeal, they certainly could.

Last but not least, the fifth factor similarly weighs in favor of the appeal not being rendered moot. While Appellee argues that FCP had to seek a stay of the Third Amended Plan to maintain its appeal right, recent Second Circuit case law holds this is not a requirement. The inquiry of whether the appellant pursued a stay of execution of the objectionable order is only relevant "if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." *In re Windstream Holdings, Inc.*, 838 Fed Appx 634, 636 (2d Cir. 2021). This is not the case here because a stay of the confirmed plan is not necessary to prevent inequity.

No interested party to the Chapter 11 case is harmed or will be harmed by this appeal, and FCP does not seek to unwind a series of complex transactions or to deprive any creditor of any amounts which the Third Amended Plan provides for them. FCP's challenge is limited to the Luftig Injunction and is not focused on any substantive provision of the Third Amended Plan as it relates to the Debtor or any creditor of Debtor. The issue is that the Third Amended Plan infringes on FCP's rights that are separate and independent from any claims or judgments against the Debtor.

All of the *Chateaugary* factors weigh against finding this appeal equitably moot.  Indeed, the Luftig Injunction, without any corresponding protections of Luftig's creditors, is facially inequitable, and it should be considered and reversed by this Court.

## CONCLUSION

For all of the foregoing reasons and those discussed in FCP's Opening Appellant's Brief, FCP respectfully requests that this Court reverse the Order confirming the Third Amended Plan; order that the Third Amended Plan be modified to either delete the Luftig Injunction or provide some protections for Luftig's creditors while the injunction is in effect; and grant such other and further relief as the Court deems proper.

Dated: July 14, 2025
    Buffalo, New York

         **LIPPES MATHIAS LLP**

         */s/Svetlana K. Ivy*
         Svetlana K. Ivy, Esq.
         Christopher M. Fisher, Esq.
          (*SDNY admission pending*)
         50 Fountain Plaza, Suite 1700
         Buffalo, New York 14202-2216
         (716) 853-5100
         sivy@lippes.com
         cfisher@lippes.com

         *Attorneys for Appellant*
         *FCP Entertainment Partners, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,</u>
## <u>TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 3,419 words.

2. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen (14) point Times New Roman.


Dated: July 14, 2025
     Rochester, New York

                                            */s/Svetlana K. Ivy*_____
                                            Svetlana K. Ivy

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, I electronically filed the foregoing Appellant's Reply Brief with the Clerk of the Court for the United States District Court for the Southern District of New York by using the CM/ECF system.  All of the participants in this case are registered CM/ECF users, and will be served by the CM/ECF system.

/s/Svetlana K. Ivy
LIPPES MATHIAS LLP
Svetlana K. Ivy, Esq.
Christopher M. Fisher, Esq.
(SDNY admission pending)
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202-2216
(716) 853-5100
sivy@lippes.com
cfisher@lippes.com

Counsel for Appellant
FCP Entertainment Partners, LLC