USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE HAL LUFTIG COMPANY, INC.,

Debtor.

25-CV-02580 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Appellant FCP Entertainment Partners, LLC appeals from the March 6, 2025 Order of the United States Bankruptcy Court for the Southern District of New York (the "Confirmation Order"), confirming Appellee Hal Luftig Company, Inc.'s Third Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"). Dkt. No. 1. For the reasons set forth below, the Confirmation Order is AFFIRMED.

## BACKGROUND[1]

Hal Luftig Company, Inc. (the "Debtor") is a theatrical production company that develops, acquires, and promotes theatrical plays, musicals, and similar works. App'x at 109. Hal Luftig is the Debtor's President and sole shareholder. *Id.* On August 12, 2019, FCP Entertainment Partners, LLC ("FCP"), a former business partner of and investor in the Debtor's projects, initiated an arbitration against the Debtor for breach of contract and against Mr. Luftig for breach of fiduciary duty. *Id.* at 225. On April 1, 2022, the arbitrator found the Debtor and Mr. Luftig jointly and severally liable to FCP in the amount of approximately $2.6 million. *Id.* That award was confirmed by the United States District Court for the Southern District of New

[1] The following facts are drawn from Appellant's Appendix, Dkt. No. 6-1 ("App'x"), designating the bankruptcy record in connection with this appeal, and are undisputed unless noted otherwise. Citations to Appellant's Appendix incorporate by reference the documents cited therein and use the pagination contained therein, omitting the prefix "AA-".

York on October 26, 2022, and a final judgment was entered in favor of FCP on November 2, 2022 (the "Final Judgment"). *Id.* at 225–26.

On December 1, 2022, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and elected to proceed as a Subchapter V reorganization case. *Id.* at 226. On the same day, the Debtor sought an extension of the automatic stay to Mr. Luftig and the issuance of a preliminary injunction enjoining FCP from executing the Final Judgment against Mr. Luftig during the pendency of the bankruptcy proceeding. *Id.* The Debtor argued "unusual circumstances" warranted extension of the automatic stay to a non-debtor because the Debtor derived profits from the shows produced by Mr. Luftig, and if he were not protected by the automatic stay, Mr. Luftig "would be forced on a daily basis to deal with FCP's enforcement collection efforts," which would in turn "irreparably harm the Debtor's chance of a successful reorganization." *Id.* On January 13, 2023, the Bankruptcy Court entered an order extending the automatic stay to Mr. Luftig pursuant to 11 U.S.C. §§ 362(a) and 105(a). *See id.* at 34–36. The Bankruptcy Court found, *inter alia*, that "any judgment enforced against Mr. Luftig would result in a claim against the estate, frustrating [the Debtor's] efforts to confirm a plan and successfully reorganize." *Hal Luftig Co. v. FCP Ent. Partners, LLC (In re Hal Luftig Co.)*, No. 22-AP-01176 (JPM), 2023 Bankr. LEXIS 19, at *12 (Bankr. S.D.N.Y. Jan. 5, 2023). The order halted any enforcement or collection activities by FCP against Mr. Luftig pending resolution of the bankruptcy proceeding. *Id.* at *19.

The Debtor and FCP agreed to set FCP's claim in the Chapter 11 case at approximately $2.86 million. *See* App'x at 227. On March 1, 2023, the Debtor filed its first Chapter 11 Small Business Subchapter V Plan (the "Initial Plan"). *Id.* at 228. The Initial Plan contained a non-debtor third-party release for Mr. Luftig in exchange for, *inter alia*, a one-time cash contribution

of $500,000 from him (the "Luftig Release"). *Id.* On November 22, 2023, the Bankruptcy Court issued an opinion containing proposed findings of fact and conclusions of law, and recommending confirmation of the Initial Plan subject to certain modifications. *Id.* at 37–105. Those modifications were reflected in an amended plan filed by the Debtors on November 27, 2023; the amended plan contained the Luftig Release. *Id.* at 152. FCP objected, arguing that the Bankruptcy Court misapplied Second Circuit precedent in granting the Luftig Release and that the inclusion of that release tainted the proposed plan. *Id.* at 106–26. The District Court agreed with FCP, specifically finding that the Luftig Release was not permitted by the Bankruptcy Code and relevant law, and denied confirmation of the Initial Plan on March 19, 2024. *Id.* at 149–58.

In June 2024, the United States Supreme Court issued its decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024). The Supreme Court held that "the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Id.* at 227. *Harrington* foreclosed Mr. Luftig's ability to obtain a permanent release of liability from the Final Judgment without the consent of all impaired creditors.

On November 21, 2024, the Debtor filed its Third Amended Small Business Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"). App'x at 159–81. Relevant to this appeal, the Plan, which runs for five years, replaces the Luftig Release with language extending "in full force and effect" "all injunctions or stays . . . in existence on the Confirmation Date," including the extension of the automatic stay to Mr. Luftig, until the earliest of (i) the close of the Chapter 11 case, (ii) dismissal, or (iii) the grant or denial of discharge (the "Luftig Stay Extension"). *Id.* at 171–72. The Plan also includes an agreement by Mr. Luftig to "contribute up to an aggregate of $100,000.00 in accordance with Bankruptcy Code

§1191(c)(3)(B), in the event the Debtor cannot make the payments required by the Plan" (the "Back-Stop Commitment"). *Id.* at 175. FCP once again objected to the Plan's confirmation on the grounds that the Luftig Stay Extension effectively amounts to a non-debtor discharge over the life of the Plan, and its inclusion does not provide for fair and equitable treatment as required by 11 U.S.C. § 1191(b). *Id.* at 213–18.

On February 24, 2025, following a confirmation hearing, the Bankruptcy Court confirmed the Plan in full, over FCP's objection and over the votes of all classes entitled to vote rejecting the Plan. *In re Hal Luftig Co.*, 667 B.R. 638, 644 (Bankr. S.D.N.Y. 2025). In its memorandum opinion and order, the Bankruptcy Court concluded that the duration of the Luftig Stay Extension did not render the Plan impermissible and found that the extension was necessary for the Debtor's successful reorganization. *Id.* at 659–62. The Bankruptcy Court also determined that the inclusion of the Luftig Stay Extension did not render the Plan unfair or inequitable. *Id.* at 662–63.

FCP timely appealed to this Court. Dkt. No. 1.

## DISCUSSION[2]

This appeal raises a single issue: whether the Bankruptcy Court erred, as a matter of law, by extending the automatic stay under Bankruptcy Code Section 362(a) to a non-debtor, over the objection of an impaired creditor, during the life of a confirmed five-year reorganization plan. Dkt. No. 3 at 1. On the facts of this case, the Court finds that the extension of the automatic stay to Mr. Luftig for the life of the Plan was permissible, and that the inclusion of that extension does not render the Plan unfair or inequitable.

[2] The Court refers to the filings in the following manner: FCP's appellant brief, Dkt. No. 6, as "Appellant's Br."; the Debtor's appellee brief, Dkt. No. 7, as "Appellee's Br."; and FCP's reply brief, Dkt. No. 10, as "Reply Br."

## I. STANDARD OF REVIEW

28 U.S.C. § 158(a)(1) vests district courts with appellate jurisdiction to review "final judgments, orders, and decrees" of the bankruptcy courts. The Court reviews factual findings for clear error and legal conclusions *de novo*. *In re Charter Commc'ns Inc.*, 691 F.3d 476, 482–83 (2d Cir. 2012).[3] The decision to grant or deny an injunction is reviewed for abuse of discretion. *See In re Chateaugay Corp.*, 109 B.R. 613, 621 (S.D.N.Y. 1990) (reviewing a bankruptcy court's injunction of non-debtor litigation for abuse of discretion).

## II. THE CONFIRMATION ORDER IS AFFIRMED

### A. The Bankruptcy Court Did Not Err in Extending the Automatic Stay to Mr. Luftig Over the Life of the Plan

The automatic stay provision of 11 U.S.C. § 362 stays the "commencement or continuation" of all "proceeding[s] against the debtor." 11 U.S.C. § 362(a)(1). As a general rule, the automatic stay does not apply to non-debtors. *In re Durr Mech. Constr., Inc.*, 604 B.R. 131, 136 (Bankr. S.D.N.Y. 2019); *see also Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("It is well established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.").

In *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003), the Second Circuit recognized a limited exception to this rule, holding that the automatic stay may extend to non-debtors "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Id.* at 287. The *Queenie* court identified specific exceptions that would warrant an extension of the stay, including: (1) a claim to establish an obligation as to which the debtor is a guarantor, *id.*; (2) a claim against the debtor's insurer, *id.* at

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

287–88; and (3) actions where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant," *id.* at 288.

Pursuant to Section 105(a) of the Bankruptcy Code, bankruptcy courts have the power "to enjoin acts against third parties when they impair a debtor's ability to reorganize in a chapter 11 case." *In re Lyondell Chem. Co.*, 402 B.R. 571, 587 (Bankr. S.D.N.Y. 2009); *see also In re Calpine Corp.*, 365 B.R. 401, 409 (S.D.N.Y. 2007). Thus, separate and distinct from the requirement that the claim against the non-debtor have an "immediate adverse economic consequence for the debtor's estate," *Queenie*, 321 F.3d at 287, a court seeking to enjoin non-debtor litigation must also satisfy itself that the normal elements for obtaining injunctive relief are established. *In re Lyondell Chem.*, 402 B.R. at 587–88. "While the Second Circuit has never explicitly established the standard for reviewing a preliminary injunction issued under Section 105 of the Bankruptcy Code, various [courts] have resolved the issue by evaluating the traditional four factors for injunctive [relief], as applied specifically to a bankruptcy: (1) whether there is a likelihood of successful reorganization; (2) whether there is either imminent irreparable harm to the estate in the absence of an injunction, or the action to be enjoined is one that threatens the reorganization process; (3) the balance of the comparative harms to the debtor, and to the debtor's reorganization, against that to the would-be-enjoined party should an injunction be issued; and (4) whether the public interest weighs in favor of an injunction." *In re Purdue Pharma L.P.*, No. 24-CV-07042 (CM), 2024 WL 4894349, at *7 (S.D.N.Y. Nov. 26, 2024).

FCP does not challenge the Bankruptcy Court's finding that the "enforcement of the [Final Judgment] against Mr. Luftig will have an immediate adverse effect on the debtor's estate," *In re Hal Luftig Co.*, 667 B.R. at 660, nor does FCP dispute the Bankruptcy Court's findings on each element of the preliminary injunction analysis, *see id.* at 662 (finding that "the

extraordinary circumstance of this case satisfies the four-factor test for preliminary injunctive relief, and that the Luftig Stay Extension should be approved"). Citing extensively to the record, the Bankruptcy Court made detailed findings that the Luftig Stay Extension was necessary to the Debtor's successful reorganization, *id.* at 660, and that the Debtor sufficiently demonstrated that the extension should be approved based on the traditional preliminary injunction standard as modified to fit the bankruptcy context, *id.* at 660–62.[4] The Court has reviewed these findings for clear error and finds none.

FCP's sole argument as to the impropriety of the stay extension to Mr. Luftig is the absence of caselaw "where a non-debtor was granted protection from creditors for the life of the [bankruptcy] plan." Appellant's Br. 11. As an initial matter, the Court agrees with FCP (and the Bankruptcy Court) that the issue presented—whether a non-debtor may enjoy the protections of the automatic stay for the duration of a five-year reorganization plan—is one of first impression. *Id.* at 11–12; *see also In re Hal Luftig Co.*, 667 B.R. at 659 ("Notwithstanding the wealth of precedents extending the automatic stay to non-debtors pursuant to Bankruptcy Code §§ 105 & 362(a), it appears to be an issue of first impression as to whether a non-debtor stay extension should remain in place for the life of a plan."). But the Luftig Stay Extension's five-year duration over the life of the Plan does not render it impermissible *per se*, and the Court rejects FCP's invitation to hold, as a matter of law, that an extension of the automatic stay to a non-debtor is facially unlawful merely because it may last through the life of a reorganization plan.

[4] The Bankruptcy Court adopted the standard of review for non-debtor stay extensions outlined in *In re Parlement Techs., Inc.*, 661 B.R. 722 (Bankr. D. Del. 2024) and *In re Purdue Pharma L.P.*, 666 B.R. 461 (Bankr. S.D.N.Y. 2024). *See In re Hal Luftig Co.*, 667 B.R. at 661 ("[T]he Court agrees with the *Purdue Pharma L.P. v. Massachusetts* court, and adopts the post-*Purdue Pharma* standards proposed by the bankruptcy court in *Parlement Techs.*"). FCP does not argue on appeal that the Bankruptcy Court applied the wrong legal standard, so the Court assumes that the *Parlement Technologies* standard for non-debtor stay extensions applies in this case.

In support of its position, FCP principally relies on the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024). The question in *Harrington* was "whether a court in bankruptcy may effectively extend to *nondebtors* the benefits of a Chapter 11 discharge usually reserved for *debtors*." *Id.* at 215. The Supreme Court answered in the negative, holding that the Bankruptcy Code "does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Id.* at 227. FCP argues this holding is "particularly applicable" here, because according to FCP, the Luftig Stay Extension "effectively operate[s] as a discharge for the life of the plan." Appellant's Br. 17.

FCP's reliance on *Harrington* is misplaced. First, the Supreme Court's holding in that case was a narrow one. *See* 603 U.S. at 227. The Court clarified that a plan of reorganization may not contain a non-consensual release of claims against non-debtor third parties but "otherwise left unchanged the . . . power of a bankruptcy court, in appropriate circumstances, to temporarily enjoin litigation, not only against debtors, but against third parties who, by virtue of their relationship to debtors, may have assets or claims that could impact the *res* of the bankruptcy estate." *In re Purdue Pharma L.P.*, 2024 WL 4894349, at *7. The discharge at issue in *Harrington* was a permanent extinguishing of non-debtor liabilities without the consent of the affected creditors, and without subjecting the released parties to the bankruptcy process. *See* 603 U.S. at 211–12. A time-limited pause on enforcement or collection actions, through an automatic stay extension, is fundamentally different, and much closer to the ordinary and commonplace powers afforded to bankruptcy courts to effectuate debtor reorganizations. Contrary to FCP's contention, the Supreme Court in *Harrington* did not foreclose the ability of a

bankruptcy court to exercise its equitable powers to temporarily enjoin a creditor's collection efforts against a non-debtor, and the Court declines to adopt FCP's overly broad reading.[5]

Nor can the Court agree with FCP's assertion that the Luftig Stay Extension "is analogous to an effective discharge." Reply Br. 5. A discharge under Bankruptcy Code Section 1141(d)(1)(A) (as incorporated by Section 1192 for Subchapter V cases) "voids any past or future judgments on the discharged debt" and "operates as an injunction prohibiting creditors from attempting to [ever] collect or to recover the debt." *Harrington*, 603 U.S. at 215 (alteration added) (quoting *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004)). The time-limited extension of the stay to Mr. Luftig does not void the Final Judgment against him nor permanently bar FCP from taking action to enforce or collect on its judgment. Rather, the extension temporarily enjoins FCP over the five-year life of the Plan (or sooner, if the case is dismissed or discharged), and "once the Debtor completes its payments under the [Plan] and obtains a discharge, FCP will be free to pursue its claim against Mr. Luftig." *In re Hal Luftig Co.*, 667 B.R. at 663–64.

It bears emphasizing that this decision is confined strictly to the facts and record of this case and should not be read as announcing a general rule that *any* non-debtor stay extension over

[5] FCP also argues that *Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contracting of N.Y., LLC*, 536 B.R. 48 (E.D.N.Y. 2015), supports its contention that an automatic stay may not extend to a non-debtor over the life of a bankruptcy plan. Appellant's Br. 12–13; *see also* Reply Br. 6. *Pavers* does not help FCP's position. There, after one of the defendants filed for Chapter 11 relief, all four corporate defendants—both debtor and non-debtor—asserted that the automatic stay applied to them, because they were alleged to be alter egos of each other. *Pavers*, 536 B.R. at 50. The *Pavers* court rejected the defendants' contention, explaining that it had "neither the facts nor any procedure for obtaining the facts that would allow [it] to determine what [wa]s in the best interest of the debtor's estate," including whether "pursuit of the claims against the non-debtors would have either an immediate or an adverse effect on the debtor." *Id.* at 52–53. The facts and procedural posture of *Pavers* are markedly different from the situation here, where the Bankruptcy Court held a hearing and did extensive factual analysis to make the requisite "specific findings that the anti-suit injunction . . . [wa]s necessary to . . . effectuate [the Debtor's] reorganization." *Id.* at 52. The Court's task on this appeal is to examine those factual findings for clear error.

the life of a bankruptcy plan comports with a bankruptcy court's equitable authority under Section 105. A stay enjoining non-debtor collection or enforcement over a plan of substantially longer duration, or under different facts, could conceivably amount to the functional equivalent of an impermissible discharge of a non-debtor. But that is not the case here, and it is not this Court's task to draw such lines in adjudicating this appeal. *See Pavers & Rd. Builders Dist. Council Welfare Fund v. Core Contracting of N.Y., LLC*, 536 B.R. 48, 52 (E.D.N.Y. 2015) ("The necessity of determining whether to extend the stay on a case by case basis is crucial."). Here, the Bankruptcy Court engaged in the necessary fact-finding and concluded that the Luftig Stay Extension was necessary to the Debtor's survival and successful reorganization by ensuring the availability of the linchpin of its operations. Those findings are not clearly erroneous, and accordingly, the Bankruptcy Court did not err in extending the automatic stay to Mr. Luftig over the life of the Plan.

**B. The Bankruptcy Court Did Not Err in Finding the Plan Fair and Equitable**

Bankruptcy Code Section 1191(b) permits confirmation of a non-consensual plan if the Court finds that the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims" that is impaired and has not accepted the plan. 11 U.S.C. § 1191(b). The Bankruptcy Code sets out a number of requirements for a "fair and equitable" finding including, under Section 1191(c), that: (1) the debtor will contribute all of its projected disposable income to make payments under the plan for the plan's lifespan (three to five years); and (2) either the debtor "will be able" to make all payments under the plan, or there is a "reasonable likelihood" that the debtor will be able to do so and the plan provides for "appropriate remedies" if the payments are not made. 11 U.S.C. § 1191(c).

FCP advances two primary arguments as to why the Plan is not fair and equitable. First, FCP argues that the inclusion of the Luftig Stay Extension renders the Plan unfair and

inequitable because in FCP's view, the stay as to Mr. Luftig "essentially amounts to a discharge over the life of the [Plan]." Appellant's Br. 16. This argument fails for the reasons discussed above: the stay extension does not amount to a discharge because FCP is free to pursue its claim against Mr. Luftig at the end of the Plan's five-year life or after dismissal or discharge, whichever comes first.[6]

Second, FCP asserts for the first time on appeal that the Plan "imposes no restrictions whatsoever to prevent dissipation of assets or other improper conduct by Luftig." Appellant's Br. 18. FCP points specifically to the Back-Stop Commitment requiring Mr. Luftig to contribute up to $100,000 to fund the Plan if the Debtor defaults on its payments. *Id.* According to FCP, the Back-Stop Commitment is "clearly insufficient" under Section 1191(c)(3)(B)(ii), which requires a non-consensual plan to provide appropriate remedies for creditors in the event payments are not made. *Id.*

As an initial matter, this argument is waived because FCP did not raise it with the Bankruptcy Court. *See, e.g.*, *In re Worldcom, Inc.*, No. 07-CV-03408 (DLC), 2007 WL 2682882, at *8 (S.D.N.Y. Sept. 14, 2007) ("The failure to present this argument deprived the bankruptcy court of the opportunity to address it in the first instance. As a general rule . . . a federal appellate court does not consider an issue not passed upon below."); *Zaks v. Mosdos Chofetz Chaim, Inc.*, No. 21-CV-10441 (PMH), 2022 WL 4783215, at *4 (S.D.N.Y. Oct. 3, 2022); *Agra v. Dolci*, No. 22-CV-10169 (VEC), 2024 WL 3442964, at *2 n.2 (S.D.N.Y. July 17, 2024); *In re Red Dot Scenic, Inc.*, 293 B.R. 116, 123 (S.D.N.Y. 2003) (same), *aff'd*, 351 F.3d 57

[6] FCP does not point to any specific factual reason in this case, either here or in the Bankruptcy Court, why the stay extension is effectively a discharge as a factual matter. One can readily conceive of a hypothetical where particular facts could support this showing (*e.g.*, there is a particular time limitation on the non-debtor's earning power, or there is a foreseeable event that could diminish or destroy the value of property that would be used to satisfy the debt), but no such showing has been made here.

(2d Cir. 2003). Indeed, FCP "did not dispute the Court's finding in the Initial Confirmation Opinion that the Back-Stop Commitment is an appropriate remedy to protect the interested parties from a plan payment default," and did not raise any objections to the Back-Stop Commitment in opposing the Plan. *In re Hal Luftig Co.*, 667 B.R. at 664; *see generally* App'x at 213–17; Dkt. No. 7-3 at HLCA-1173–233 (transcript of the January 17, 2025 confirmation hearing).

Even if FCP had not waived this claim, the argument that the Back-Stop Commitment is a pittance also fails on the merits. *See* Reply Br. 8 ("The judgment that FCP holds against Debtor and Luftig is $2,862,776, which means a best-case scenario for FCP would have Luftig paying approximately 3% of the FCP Claim under the [Plan]."). FCP misunderstands the purpose of the remedy required by Section 1191(c)(3)(B)(ii) and, under the facts of this case, conflates the plan's arrangements to pay the Debtor's debts with its concerns about the stay extension as to Mr. Luftig and his debts. The relevant question is not whether the Back-Stop Commitment adequately protects the full value of FCP's $2.86 million judgment, but rather, whether it adequately protects creditors "in the event that the [Debtor's] payments are not made" as provided under the plan. 11 U.S.C. § 1191(c)(3)(B)(ii).[7] The Bankruptcy Court found that the Back-Stop Commitment was an appropriate remedy to protect claimholders in the event of a hypothetical default on plan payments because it is a readily available source of funding from Mr. Luftig to cover any shortfall in a particular year, and because the availability of adequate reserves to satisfy the Back-Stop Commitment was a condition precedent to the Plan's effective

[7] Courts have observed that "[t]here . . . is scant caselaw discussing what may constitute an 'appropriate' remedy for a default under a Subchapter V plan." *In re Urgent Care Physicians, Ltd.*, No. 21-BK-24000 (BEH), 2021 WL 6090985, at *11 (Bankr. E.D. Wis. Dec. 20, 2021); *see also In re Channel Clarity Holdings LLC*, No. 21-BK-07972, 2022 WL 3710602, at *16 (Bankr. N.D. Ill. July 19, 2022) ("There is not much guidance on what [Section 1191(c)(3)(B)(ii)] requires plans to include.").

date. *In re Hal Luftig Co.*, 667 B.R. at 664; *see also* App'x at 173 (provision in the Plan enumerating the conditions precedent to confirmation). This finding was not clearly erroneous.

Accordingly, FCP's arguments do not withstand scrutiny, and the Bankruptcy Court did not err in finding the Plan fair and equitable.[8]

## CONCLUSION

For the foregoing reasons, FCP's appeal is DENIED, and the Confirmation Order is AFFIRMED. The Clerk of Court is respectfully directed to terminate the pending appeal, Dkt. No. 1, and CLOSE this case.

Dated: September 30, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

[8] Because the Confirmation Order is affirmed, the Court need not address the Debtor's argument that FCP's appeal is equitably moot. *See* Appellee's Br. 27–30.